# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj, et al., | No. CV 17-01199-PHX-GMS (JZB) |
| Plaintiffs, | |
| v. | **ORDER** |
| City of Phoenix, et al., | |
| Defendants. | |

Plaintiffs David Khalaj and Juliet David Youmaran, husband and wife, brought this action against the City of Phoenix and individual Phoenix police officers and their spouses. (Doc. 72.) In their Second Amended Complaint, Plaintiffs allege violations of their rights under state law and 42 U.S.C. § 1983. (*Id.*) Before the Court is a Partial Motion to Dismiss filed by the City of Phoenix. (Doc. 73.)[1] Defendant City of Phoenix ("Defendant") contends that Plaintiffs fail to state a § 1983 claim for failure to train. (*Id.*) The Court will deny the Motion.

**I.     Procedural Background**

On September 25, 2018, the Court issued an Order addressing Defendant's Motion to Dismiss the state law and § 1983 claims asserted against it in Plaintiffs' First Amended Complaint. (Doc. 68.) The Court denied the Motion as to the state law claims of false arrest and negligent training and supervision. (*Id.* at 5–8.) The Court granted the Motion

---

[1] Also before the Court is Plaintiffs' Request to Schedule a Rule 16 Pretrial Conference, which will be addressed in a separate order. (Doc. 82.)

as to Plaintiffs' § 1983 claim for municipal liability based on a failure to train and supervise. (*Id.* at 8–9.) Plaintiffs were granted leave to amend this claim, and they did so by filing a Second Amended Complaint. (*Id.* at 9; Doc. 72.)

In the pending Partial Motion to Dismiss, Defendant moves to dismiss the § 1983 claim asserted against it in Counts Two and Three of Plaintiffs' Second Amended Complaint. (Doc. 73.)

## II. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Dismissal of the complaint, or any claim within it, may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. Second Amended Complaint

Plaintiffs allege the following relevant facts:

| | |
|---|---|
| 1 | Plaintiffs David and Juliet are both United States citizens. (Doc. 72 ¶ 31.) Around 4:00 p.m. on January 1, 2016, Plaintiffs and their two children were returning home from Puerto Vallarta, Mexico through Phoenix Sky Harbor International Airport. (*Id.* ¶ 14.) Upon clearing customs, the family was free to leave the airport. (*Id.*) David has Type 2 diabetes, and he wanted to leave the secure customs area to get something to eat to ease effects from his condition; however, he was scolded and shouted at, and, against his will, he was herded back and detained in the secured area by Customs and Border Protection (CBP) employees. (*Id.* ¶ 15.) When David complained about how he had been treated, one of the CBP employees began striking him in the arm to move him to another location, and then four CBP employees started to beat David severely, causing physical injury. (*Id.* ¶ 16.) Juliet tried to come to David's rescue and she was assaulted and detained against her will and without her consent, which caused her physical and emotional injuries. (*Id.* ¶ 17.)

Representatives from the City of Phoenix Police Department were summoned to the airport, and City of Phoenix police officers took over detention of David and Juliet in conjunction with Immigration and Customs Enforcement (ICE). (*Id.* ¶ 18.) During their dealings with David and Juliet at the airport, which lasted for hours, the Defendant police officers engaged in unreasonable and excessive force and threats, including, among other things, pushing and pulling Plaintiffs as they moved from a detained area to the restroom; pushing and pulling on handcuffs, thereby causing cutting and chaffing of the wrists; and threatening Plaintiffs and placing them in fear of further unreasonable and excessive physical force. (*Id.* ¶ 19.)

Meanwhile, ICE officers contacted the United States Attorney's Office, which declined to pursue any federal charges against Plaintiffs. (*Id.* ¶ 20.) ICE and CBP employees relinquished the case to the City of Phoenix police officers, who continued to detain Plaintiffs, took them into custody, and arrested them for Aggravated Assault Against Peace Officers, a class five felony. (*Id.* ¶¶ 21–23.) The alleged victims of the aggravated assault were all federal employees and not peace officers under Arizona law, yet no |

1 Defendant police officers bothered to check whether any of the alleged victims were peace officers under Arizona law. (*Id.* ¶¶ 24–27.)

After their arrest and while still at the airport, the jailers were informed that David had been born in Iran and Juliet had been born in Iraq. (*Id.* ¶ 32.) During their confinement by the Defendant City of Phoenix police officers, Plaintiffs were called a variety of racial epithets, and the constant verbal assaults placed Plaintiffs in fear of what Defendant police officers would do next. (*Id.* ¶ 33.)

At some point, the police officers took Plaintiffs to the hospital for their injuries. (*Id.* ¶ 20.) Plaintiffs were eventually taken to booking and jail by police officers and held there. (*Id.* ¶ 33.)

**IV.     Municipal Liability for § 1983 Claim**

A municipality cannot be vicariously liable for the torts of its employees under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). But a governmental entity may be directly liable under § 1983 if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.* at 694. To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Municipal liability may be based on (1) a longstanding practice or custom, which constitutes the "standard operating procedure of the local government entity"; (2) "acts of omission" when the omissions amount to a policy; or (3) an unconstitutional act by an official with final policy-making authority, or when such an official ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cnty. Of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070 (9th Cir. 2016).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff must allege facts to show that the defendant "disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (emphasis added) (internal quotation marks and citation omitted). "Absent allegations of specific shortcomings in the training . . . or facts that might place the City on notice that constitutional deprivations were likely to occur," a plaintiff fails to adequately plead a § 1983 claim for failure to train. *Bini v. City of Vancouver*, 218 F. Supp. 3d 1196, 1203 (W.D. Wash. 2016). A plaintiff alleging a policy of failure to train officers must show (1) that plaintiff was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons with whom its officers are likely to come into contact; and (3) the plaintiff's constitutional injury would have been avoided had the local government unit properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

### A. Constitutional Deprivation

An "arrest without probable cause violates the fourth amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988) (citation omitted). Thus, to state a claim for false arrest under the Fourth Amendment, a plaintiff must allege that there was no probable cause for the arrest. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citation omitted). In a prior Order, the Court determined that, taking Plaintiffs' allegations as true, the facts and circumstances do not support that there was probable cause to arrest Plaintiffs for

aggravated assault against peace officers or for any other crime. (Doc. 80 at 7.) Plaintiffs' allegations therefore state a Fourth Amendment violation for unlawful arrest, and they satisfy the first prong necessary to show a policy of failure to train.[2] *See Blankenhorn*, 485 F.3d at 484.

### B. Existence of Policy that Amounts to Deliberate Indifference

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008); *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). A policy can be one of action or inaction. *Long*, 442 F.3d at 1185.

A custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quotation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 409 (1997)). But a plaintiff may prove a failure-to-train claim without showing a pattern of constitutional violations where a violation "may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long*, 442 F.3d at 1186 (internal quotation marks and citation omitted).

---

[2] The Court also previously determined that Plaintiffs' allegations sufficiently state a claim for excessive force in violation of the Fourth Amendment. (Doc. 80 at 9.) In the Second Amended Complaint, however, Plaintiffs' claim against Defendant City of Phoenix is based on a policy/failure to train that resulted in the unlawful arrest. (Doc. 72 ¶¶ 51–58.)

- 6 -

In the Second Amended Complaint, Plaintiffs allege that Defendant failed to maintain adequate polices, practices or customs to adequately train officers in arresting and charging citizens. (Doc. 72 ¶ 53.) Plaintiffs allege that Defendant failed to implement a plan to address decisions concerning arrest and charges confirming peace officer status when dealing with other agencies; specifically, other agencies at Phoenix Sky Harbor Airport. (*Id.* ¶¶ 53, 57.) Plaintiffs' claims arose at Sky Harbor Airport, and Plaintiffs assert that Defendant has an office at the airport and a specific personnel unit to deal with incidences that occur at the airport. (*Id.* ¶ 55.) Plaintiffs allege that this unit is involved in arrests and charging decisions related to incidences involving the customs and border protection areas of the airport and that, as part of this unit, Defendant police officers provide assistance to customs enforcement personnel within those areas. (*Id.* ¶ 57.) According to Plaintiffs, Defendant's "policies, practices, procedures and customs should be in place, together with appropriate training, to permit appropriate decision making concerning arrests and charging decisions relating to incidences involving the customs and border protection areas" and concerning "the appropriate lines of demarcation, authority and responsibility relative" to the airport and other governmental employees. (*Id.*) Plaintiffs' allegations support that, because Defendant's police officers assigned to the specific unit at the airport regularly assist CPB employees in the customs and border protection areas, situations involving CPB employees and passengers would be foreseeable, thereby necessitating proper training in making the appropriate arrest and charging decisions related to incidents involving other agency employees. In other words, Plaintiffs' facts support that this is a situation that calls for specific procedures and training. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) ("in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable") (quoting *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)).

As stated, Plaintiffs were arrested for the charge of Aggravated Assault Against Peace Officers, and the alleged victims were CBP employees. (Doc. 72 ¶¶ 23–24.) Plaintiffs allege that confirmation of peace officer status can be quickly and easily

ascertained because state law provides a mechanism for certifying federal peace officers as Arizona peace officers, and Plaintiffs allege that AZPOST maintains a list of certified Arizona peace officers. (*Id.* ¶¶ 26–27.) Plaintiffs assert that to ascertain whether a person is a certified Arizona peace officer, Defendant police officers needed only to telephone AZPOST and ask whether any of the alleged victims were on file as certified Arizona peace officers. (*Id.* ¶ 27.) Plaintiffs' facts show that Defendant police officers did not confirm whether the alleged victims were in fact peace officers under state law such that the charge of Aggravated Assault Against Peace Officers was proper. (*Id.*) Further, Plaintiffs allege that their arrest was perpetrated by all four police officers on the scene, which supports that Defendant police officers were acting pursuant to their training or lack thereof. (*Id.* ¶¶ 8–9, 18–19, 21.) *See Henry v. Cnty. of Shasta*, 132 F.3d 512, 521 (9th Cir. 1997) (finding a policy more likely where multiple officers were involved in the constitutional violation). From these facts, the inference can be made that Defendant's police officers at the airport were not trained as to how to ascertain peace officer status prior to arresting individuals for crimes dependent on such status. Such an omission or lack of training for police officers assigned to the airport unit and who work with other governmental agency employees may amount to deliberate indifference to the constitutional rights of persons at the airport with whom these officers are likely to come into contact. *See Blankenhorn*, 485 F.3d at 484; *Long*, 442 F.3d at 1185, 1189 (the lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even if other general policies are in place).

Defendant nonetheless argues that Plaintiffs' allegations do not meet the pleading standard required under *Iqbal*. (Doc. 73 at 7.) But the cases on which Defendant relies are not persuasive. (*See id.*) In *Wereb v. Maui County*, the district court addressed a motion for reconsideration of the ruling on a motion for summary judgment, which employs a standard that considers evidence beyond the pleadings and requires a higher showing than that necessary to survive a Rule 12(b)(6) motion to dismiss. 830 F. Supp. 2d 1026, 1029 (D. Haw. 2011).

In *Dillman v. Tuolumne County*, the plaintiffs acknowledged that the defendant county had specific policies regarding use of handcuffs and strip searches and that these policies were breached. No. 1:13-CV-00404 LJO SKO, 2013 WL 3832736, at *7 (E.D. Cal. July 23, 2013). But the only allegations regarding training were that the department was underfunded and had difficulty retraining patrol officers. *Id.* Because the complaint "fail[ed] to allege a complete lack of training with reference to handcuffs, strip searches or constitutional rights," the allegations failed to show that the county was on notice that absent specific training, it was highly predicable that relevant employees would violate individuals' constitutional rights. *Id.*

Conversely, here, Plaintiffs allege a lack of training with reference to Defendant's police officers assigned to work in a specific unit at the airport, a lack of training with reference to arrests and charging decisions by these officers related to incidents that involve the customs and border protection areas of the airport, and a lack of training that fosters the likelihood that these officers will unlawfully arrest persons and violate their constitutional rights. (Doc. 72 ¶¶ 54–58.) Plaintiffs specifically allege the training necessary to avoid the constitutional violation of false arrest for certain charges; that is, how to verify peace officer status under state law. (*Id.* ¶ 27.) At this stage, these allegations are sufficient to give fair notice to Defendant as to what the claim is and to enable it to defend against the allegations effectively. *See Erickson*, 551 U.S. at 93; *AE ex rel. Hernandez*, 666 F.3d at 637.

### C. Constitutional Injury Caused by Failure to Train

Lastly, Plaintiffs must present facts sufficient to show that their injury would have been avoided had Defendant properly trained its police officers. *Id.* The alleged deficiency in the policy must be "closely related to the ultimate injury." *Canton*, 489 U.S. at 391. Plaintiffs allege that as a direct result of the lack of appropriate policies, procedures, and training for Defendant's police officers at the airport unit who worked in the customs and border protection areas with other governmental agency employees, Plaintiffs were falsely arrested; subjected to unnecessary force, threats, and racial epithets; suffered injuries to

| | |
|---|---|
| 1 | their wrists; and suffered and continue to suffer emotional distress, psychological issues, |
| 2 | and attendant physical problems. (Doc. 72 ¶¶ 19, 33–37, 58, 65.) These allegations are |
| 3 | sufficient to show that, had Defendant properly trained its police officers assigned to work |
| 4 | at the airport, Plaintiffs would not have been arrested and suffered their injuries. |
| 5 |     For the above reasons, Defendant's Partial Motion to Dismiss will be denied. |
| 6 |     **IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to |
| 7 | Defendant City of Phoenix's Partial Motion to Dismiss (Doc. 73), and the Motion is |
| 8 | **denied**. |
| 9 |     Dated this 1st day of August, 2019. |

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge