Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax:   (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com

Attorneys for Defendants City of Phoenix, Lillian (Fine) Melander, Scott Melander, Michael Green, and Todd Blanc

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| David Khalaj and Juliet David Youmaran, a married couple,<br>    Plaintiffs,<br>  vs.<br>City of Phoenix, Arizona, a municipal corporation, Lillian Fine and John Doe Fine, husband and wife; Scott Melander and Jane Doe Melander, husband and wife; Sgt. Green and Jane Loe Green, husband and wife; Todd Blanc and Jane Roe Blanc, husband and wife;<br>    Defendants. | NO. CV-17-01199-PHX-GMS (JZB)<br><br>**MOTION FOR SANCTIONS AGAINST PLAINTIFFS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Pursuant to Fed. R. Civ. P. 37(c) and (d), Defendants City of Phoenix, Lillian (Fine) Melander, Scott Melander, Michael Green, and Todd Blanc ("Defendants"), through undersigned counsel, move for sanctions against Plaintiffs David Khalaj and Juliet Youmaran ("Plaintiffs") on the basis that they failed to disclose that Plaintiff David Khalaj filed for Social Security disability benefits, claiming that he has been unable to work since July 2018, and that Plaintiffs failed to appear for their depositions on December 22, 2020, without first obtaining a protective order.  These discovery violations at this late stage of discovery in the case have prejudiced Defendants and must be addressed by the Court.

As sanctions for these discovery violations, Defendants request that the Court enter the following orders:

1

(1) dismissing Plaintiffs' damages claim based on an alleged loss of real estate transactions due to Plaintiff David Khalaj's arrest (in the event this claim is not dismissed, permitting Defendants to re-open the deposition of Plaintiffs' expert, John Foltz, at Plaintiffs' expense, including the preparation for and taking of the deposition and John Foltz's fee for appearing at the deposition);

(2) permitting Defendants to conduct discovery <u>at Plaintiffs' expense</u> directed at Plaintiff Khalaj's claim of disability (this includes subpoenaing Plaintiff Khalaj's disability file from the Social Security Administration);

(3) requiring Plaintiff Juliet Youmaran to appear for and complete her continued deposition via Zoom prior to the current deadline for completing discovery of January 18, 2021, and requiring Plaintiff David Khalaj to appear for and complete his deposition by January 29, 2021;[1]

(4) extending the deadline for Defendants to complete the foregoing discovery to January 29, 2021 and to disclose their expert witnesses to February 26, 2021; and

(5) awarding Defendants the attorneys' fees and costs they incurred as a result of Plaintiffs' non-appearance at their depositions and in bringing this motion.

This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     FACTUAL AND PROCEDURAL BACKGROUND.**

    **A.     Plaintiffs' Most Significant Claim for Damages is Their Claim That David Khalaj's Income Was Affected By His Arrest.**

In their Second Amended Complaint, Plaintiffs assert three causes of action against Defendants: (1) Arizona state law claim for false arrest/imprisonment against Defendant City of Phoenix; (2) civil rights claim brought pursuant to 42 U.S.C. § 1983 for false

---

[1] Additional time to complete discovery may be needed because Defendants' counsel Lori Berke is currently recovering from COVID-19 which was diagnosed on December 24, 2020. While she is hopeful she will be fully recovered and able to return to work full time on January 5, 2021, it may take more time than that to fully recover and be in a position to take a full day deposition.

arrest/imprisonment and unreasonable force/threats against all Defendants; and (3) negligent failure to train under Arizona law and failure to train and supervise under 42 U.S.C. § 1983 against Defendant City of Phoenix. (Doc. 72). Plaintiffs were arrested by federal Customs and Border Protection ("CBP") Officers after they got into a physical altercation with CBP Officers at Sky Harbor International Airport. They remained in federal custody for approximately seven hours until federal investigators made the decision not to charge them with a federal crime and City of Phoenix police officers took over custody. Plaintiffs were both booked into jail for aggravated assault and David Khalaj was also booked on a charge of threatening and intimidating. Plaintiffs were released from jail several hours later. Plaintiffs admitted in discovery responses that the Defendant City of Phoenix police officers did not use any force against Plaintiff Youmaran and the only force used against Plaintiff Khalaj was handcuffing him and allegedly pulling on his handcuffs. (See Plaintiffs' David Khalaj and Juliet Youmaran's Responses to Defendant City of Phoenix's Interrogatories, Interrogatory No. 8, dated December 31, 2019, attached hereto as Exhibit 1). Because Plaintiffs did not suffer any significant damages as a result of their arrest and the short amount of time they spent in custody, they manufactured a claim that the income of Plaintiff David Khalaj's real estate business was affected by his arrest. Specifically, they claim that as a result of David Khalaj's arrest on January 1, 2016, past real estate clients of David Khalaj—professional athletes and coaches and non-athletes and coaches chose not to continue their business relationship with Khalaj and instead used other real estate agents. (See Plaintiffs' Disclosure of Designated Experts, dated March 13, 2020, with John Foltz report included, attached hereto as Exhibit 2). According to Plaintiffs' real estate expert John Foltz, but for Plaintiff Khalaj being arrested on January 1, 2016, Plaintiff Khalaj would have completed numerous additional transactions in his real estate business for the calendar years 2016 through 2021. Implicit in this opinion is an ongoing ability on the part of Plaintiff Khalaj to work full time as a real estate agent from 2016 through 2021. Plaintiffs are seeking to recover $1,374,381 on this claim. (See Exhibit 2, p. 5 of John Foltz report).

### B. Plaintiffs Failed to Disclose that Plaintiff David Khalaj Filed a Claim for Disability Asserting that He Has Been Totally Disabled and Unable to Work Since July 17, 2018.

On November 26, 2019, Defendants served Interrogatories on Plaintiffs, one of which requested a list of all jobs or positions of employment held for the past ten years by each Plaintiff. (See Defendant Lillian (Fine) Melander's Interrogatories to Plaintiffs, dated November 26, 2019, Interrogatory No. 19, attached hereto as Exhibit 3). When Plaintiffs finally provided their responses to these Interrogatories on or about February 14, 2020, they responded that Plaintiff David Khalaj was presently employed as a real estate agent with Pro Sports Realty, and that he had been so employed from "September 2015-present." (See Plaintiffs David Khalaj and Julie Youmaran's Responses to Defendant Lillian (Fine) Melander's Interrogatories, Interrogatory No. 19, attached hereto as Exhibit 4).

On March 13, 2020, Plaintiffs disclosed Mr. Foltz as an expert witness and disclosed the report authored by Mr. Foltz, dated February 10, 2020. (See Exhibit 2). As set forth above, Mr. Foltz opines that the damages David Khalaj suffered for lost income to his real estate business as a result of his arrest total $1,374,381 for the calendar years 2016 through 2021. (See Exhibit 2, p. 5 of John Foltz Report). Mr. Foltz opines in his report that Khalaj's lost income from January 1, 2016 to July 2018 was approximately $386,852. Thus, Khalaj is claiming $987,529 for lost income between July 2018 and the present. It is apparent from Mr. Foltz's deposition testimony that he was not aware of Plaintiff Khalaj's claimed inability to work since July of 2018. At his deposition on August 6, 2020, Mr. Foltz testified that he met with Mr. Khalaj on two different occasions in January 2020—one of them at Mr. Khalaj's real estate office—to discuss information needed by Mr. Foltz to prepare his report in the case. (See Deposition Transcript of John Foltz, dated August 6, 2020, pp 39-40, 111-112, Exhibit 2, attached hereto as Exhibit 5). During his deposition, Mr. Foltz described Mr. Khalaj's real estate office as it was in January 2020, including that there were several other individuals there who were either employees or clients. (See Exhibit 5, pp. 193-195). Based on testimony Plaintiff Khalaj had given in an unrelated civil lawsuit on April 27, 2016, that he had not been able to work for approximately "a year and a half" between early 2013 and

November 2014 because he was "sick, bedridden, could not service the clients" (see Deposition Transcript of David Khalaj in Khalaj v. State Farm, 2:15-CV-01827-GMS, dated April 27, 2016, pp. 60-61, 240-241, attached hereto as Exhibit 6), Defendants' counsel wanted to know if Plaintiff Khalaj had provided that information to Mr. Foltz, so Defendants' counsel questioned Mr. Foltz as follows:

> Q. And do you know about any health issues he's had?
>
> A. Vaguely that he – I'm just not well enough informed. I believe he was -- might have been prediabetic, but I'm uncertain about that.
>
> Q. Do you know if there was ever any period of time where he was almost unable to work for a year or so?
>
> A. I'm not aware of that, no.
>
> Q. But certainly if he was so ill that he could hardly work, that could impact someone's business; correct?
>
> . . .
>
> THE WITNESS: Yeah. It's a series of questions that you're asking about could it impact. The answer is going to be yes, of course, it could. I have no way to know that it did or didn't.
>
> Q. . . . And you did no analysis of anything going on in Mr. Khalaj's life at any point in time other than his arrest; correct?
>
> A. I didn't analyze his arrest, either. I only analyzed the business being done before the date of the incident and the business done after the date of the incident to see if there were any comparisons and to try to opine as to why that may have happened.

(Exhibit 5, pp. 187-188).

On December 23, 2020, Defendants deposed social security disability attorney, Jeffrey Milam, who was recently disclosed by Plaintiffs as Plaintiff Juliet Youmaran's disability attorney.[2] During that deposition, Defendants learned for the first time that Plaintiff David Khalaj also retained Mr. Milam to represent him in a disability action, that Khalaj filed an application for disability benefits with the Social Security Administration in April 2020, and

---

[2] The transcript of Mr. Milam's deposition is not yet available. As soon as it is available, Defendants will supplement this Motion with the precise testimony on this issue.

in that application, Khalaj claims he is totally disabled and can no longer work, that he has been totally disabled and unable to work since July 17, 2018, and that the following conditions have rendered him to be disabled:

    1. PTSD and depression;

    2. Bilateral knee pain;

    3. Diabetes mellitus – Type I;

    4. Right hand numbness and tingling – neuropathy;

    5. Right foot numbness and tingling – neuropathy;

    6. Right side of face numbness and tingling – stroke;

    7. Stroke residuals;

    8. Bilateral wrists;

    9. Right shoulder pain;

    10. Neck pain.

(See David Khalaj Disability Application, dated April 15, 2020, attached hereto as Exhibit 7).

It is important to point out that Plaintiffs did not disclose that Plaintiff Khalaj filed an application for disability benefits. This information only came to light during Jeffrey Milam's deposition when Plaintiff's counsel objected to questioning surrounding certain communications between Mr. Milam and Plaintiff Khalaj on the basis of attorney-client privilege. When defense counsel sought to clarify that Mr. Milam does not represent Khalaj, and only represents Plaintiff Youmaran, Mr. Milam responded that as of early 2020, he has also represented Khalaj in connection with an application for disability benefits Khalaj filed.[3] Defendants' counsel requested that Mr. Milam email the application for disability benefits to her, which he did during the deposition.

---

[3] Mr. Milam's deposition was not completed on December 23, 2020, because so much time was unexpectedly spent on Mr. Milam's representation of David Khalaj. As such, the parties and Mr. Milam agreed to resume on a later date to complete his deposition.

Even though Plaintiff Khalaj represented to the Social Security Administration in April 2020 that he has been totally disabled and unable to work since July 2018 due to a disability, he stated in his response to Defendants' Interrogatory No. 19 in February 2020 that he was working as a realtor at that time and had been consistently working as a realtor for many years. Khalaj makes no mention of an alleged disability that rendered him unable to work since July of 2018, and even after he filed the disability application, he did not amend or supplement his answer to Interrogatory No. 19 to reflect this information. Additionally, Plaintiffs' real estate expert bases his opinions regarding Plaintiff Khalaj's alleged damages on Khalaj working full time from January 1, 2016 through the end of 2021. As set forth below, this failure to disclose is not harmless and Defendants have been prejudiced by Plaintiffs not timely providing this information.

**B.   Plaintiffs' Depositions Have Been Scheduled but Not Completed Six Different Times Necessitating Numerous Extensions of the Case Deadlines and Preventing Defendants From Being Prepared to Disclose Expert Witnesses.**

As the Court pointed out in its recent Order ruling on the parties' Stipulated Motion for Extension of Remaining Case Deadlines, the parties have requested to extend the case management deadlines ten times. (Doc. 217). However, as is clear from the Stipulated Motions filed requesting the extensions, most of the requests to extend the deadlines were due to Plaintiffs' requests to reschedule their depositions or Plaintiffs' interference with Defendants' efforts to obtain information and documents needed by their experts. (See Docs. 189, 200, 211, 216).

Plaintiffs' depositions were originally scheduled to be taken on August 11 and 12, 2020. (Docs. 175, 176). However, Plaintiffs had filed a Motion to Quash/Motion for Protective Order (Doc. 154) to preclude their bank, Desert Financial Credit Union, from producing their bank records pursuant to a subpoena issued to the bank. The Court denied that motion on August 5, 2020 (Doc. 179), but the bank advised Defendants' counsel that it was not going to produce the records until August 13, 2020. (See Doc. 183). Therefore, Plaintiffs' depositions were rescheduled to August 27 and 28, 2020. (Docs. 181, 182).

7

1  Plaintiffs then requested that their depositions be postponed due to a family medical
2  emergency that required them to travel out of state the week that included August 27 and 28,
3  2020. (Doc. 189). In the interim, another dispute arose with the production of the bank
4  records, which had to be resolved by the Court. (See Doc. 198). Plaintiffs' depositions were
5  rescheduled to September 29 and 30, 2020 (Docs. 193, 194), but could not be taken on those
6  dates because the dispute with the bank was not resolved by the Court until October 13, 2020.
7  (Doc. 198). The bank was not required by the Court to produce the records to Defendants
8  until October 30, 2020 (Doc. 198), and it waited until that day to produce the records.
9  Plaintiffs' depositions were again rescheduled to take place on November 17 and 18, 2020.
10 (Docs. 205, 206). Defendants began the deposition of Plaintiff Juliet Youmaran on
11 November 17, 2020, but it could not be completed due to the number of breaks requested by
12 Plaintiff Youmaran and her claim that she was too tired to continue. (See Deposition
13 Transcript of Juliet David Youmaran, dated November 17, 2020, pp. 175-178, attached hereto
14 as Exhibit 8). Defendants continued taking Plaintiff Youmaran's deposition the following
15 day—November 18, 2020 (the date on which Plaintiff Khalaj was scheduled to be deposed)
16 but the deposition could not be completed because Ms. Youmaran claimed she was not
17 physically able to continue and she insisted that the deposition end for that day. (See
18 Deposition Transcript of Juliet David Youmaran, dated November 18, 2020, pp. 297-299,
19 attached hereto as Exhibit 9). There were no additional days available to the parties' counsel
20 to take depositions that week because other depositions in this case were scheduled for
21 November 18 and 19. (See Docs. 208, 209, 210). Thus, the soonest the continued deposition
22 of Plaintiff Youmaran and the deposition of Plaintiff Khalaj could be scheduled was
23 December 8 and 9, 2020. (Docs. 211, 213).
24     On December 3, 2020, Plaintiffs' counsel contacted Defendants' counsel and advised
25 that one of Plaintiffs' family members, who resides in the same household, might have been
26 exposed to COVID-19. (Doc. 211). Additionally, Plaintiff Khalaj claimed he had started
27 experiencing COVID symptoms, but ultimately tested negative for COVID-19. (Doc. 211).
28 Plaintiffs' counsel Marc Nurik (who resides in Southern California) also advised Defendants'

counsel that he has underlying health conditions and did not want to be around Plaintiff Khalaj while Plaintiff Khalaj was experiencing symptoms. Based on these representations, the parties agreed to postpone the continued deposition of Juliet Youmaran to December 22, 2020 (Doc. 214), and the deposition of David Khalaj to December 22 and 23, 2020. (Doc. 215). The parties filed a stipulated motion seeking an extension of the case deadlines due to Mr. Khalaj's illness and the need to once again postpone the depositions (Doc. 216), which the Court granted only in part. (Doc. 217). The Court extended the deadline for Defendants to disclose expert witnesses and for the parties to complete fact discovery by one week, but did not extend any of the other remaining case deadlines. (Doc. 217). In the Order, the Court stated, "No further extension will be granted absent truly extraordinary circumstances." (Doc. 217, p. 2).

On Saturday, December 19, 2020, at 5:07 p.m. Arizona time, Plaintiff's counsel Marc Nurik e-mailed Defendants' counsel Lori Berke advising as follows:

> My client, David Khalaj is currently ill, with fever, chills and other ailments. Unfortunately, his condition has not improved while he has remained at home- in fact it has worsened. He is currently on a regimen of antibiotics. In addition, his condition has made it impossible for us to work with him to prepare for the deposition. He suspects now that he may have strep throat, but cannot see a doctor again till Tuesday. (inadvisable to go to urgent care centers). As such, he is unable to prepare for and attend next Tuesday's deposition.
>
> It makes no sense for me to go thru the current increased risks involved in flying from LA to Phoenix (two hot spots) given his condition (likely contagious) only to learn, what we already know--that he remains too sick to attend, let alone, unable to prepare.
>
> We will have to move the deposition(s) again. While I am free the following week on Tuesday and Wednesday if that suits your schedule, considering how slow he has been in recovering, I suggest moving the depositions to the beginning of January.
>
> Clearly, we both want more time to do follow up discovery and I am amenable to making whatever request we both think makes the most sense to convince the Court to give us more time.

(See E-mails exchanged between Marc Nurik and Lori Berke, December 19-20, 2020, attached hereto as Exhibit 10).

9

Ms. Berke responded to Mr. Nurik the following day (Sunday, December 20, 2020), as follows regarding Plaintiffs' depositions:

> There is no reason we cannot complete Ms. Youmaran's deposition on Tuesday as currently scheduled. I am willing to take it by Zoom if that is preferred.
>
> Given the Court's recent Order stating that "[n]o further extension will be granted absent truly extraordinary circumstances," I am not comfortable filing another Stipulation to extend the deadline for taking his deposition. What I would suggest is that Plaintiffs file a motion for protective order. We will not oppose it as long as the only extensions being sought are to complete Mr. Khalaj's deposition and for defendants to disclose experts. We are not going to agree to extend the discovery date for any other discovery. Please let me know if you are in agreement that a Motion for Protective Order is the best approach to take to get Mr. Khalaj's deposition postponed.

(See Exhibit 10). In the morning on Monday, December 21, 2020, the day before the depositions were scheduled to take place, Ms. Berke conferred by telephone with Mr. Nurik. Mr. Nurik advised Ms. Berke that he was amenable to filing an unopposed motion for protective order, but wished to speak again later that day. Later that day, Plaintiffs' counsel Dana Zokaeim e-mailed Ms. Berke and requested a time for a telephone conference. (See E-mails exchanged between Dana Zokaeim and Lori Berke on December 21, 2020, attached hereto as Exhibit 11). Ms. Berke spoke with Ms. Zokaeim and Plaintiffs' counsel Richard Lazenby in the late afternoon on December 21, 2020. During that phone conference, Mr. Lazenby stated he did not want to file a Motion for Protective Order because it would involve a lot of work, and he requested that Defendants simply stipulate to another extension of the case deadlines. Ms. Berke reiterated that she was not comfortable doing that in light of the Court's most recent order, and she stated that Plaintiffs would need to either file a motion for protective order or request a telephonic conference with the Court to resolve the issue. Ms. Zokaeim and Mr. Lazenby stated that they would not do either of those things. Ms. Berke also stated there was no reason Ms. Youmaran's deposition (of which only nineteen minutes remain) could not go forward. Ms. Berke stated that she had no alternative but to appear for the depositions the following day and obtain Affidavits of Non-Appearance from the Court Reporter in the event Plaintiffs failed to appear, which would result in Defendants incurring

attorneys' fees and costs. Ms. Zokaeim then sent an e-mail to Ms. Berke reiterating that Plaintiffs would not appear for their depositions and offering only to stipulate to extend case deadlines. (See Exhibit 11).

On December 22, 2020, both Plaintiffs failed to appear for their depositions as scheduled. (See Affidavit of Non-Appearance in the Scheduled Deposition of Juliet David Youmaran and Affidavit of Non-Appearance in the Scheduled Deposition of David Khalaj, both dated December 22, 2020, attached hereto as Exhibit 12). As a result of Plaintiffs' failure to appear for their depositions and failing to raise the issue with the Court before the depositions were scheduled to take place, Defendants incurred attorneys' fees and costs in the amount of $950.00. (See Declaration of Lori Berke, attached hereto as Exhibit 13).

The remainder of Plaintiff Youmaran's deposition that needs to be completed is only 19 minutes. Defendants' counsel reasonably offered to take that deposition via Zoom. If Ms. Youmaran truly needed counsel to be physically present with her during the deposition, Plaintiffs' Arizona counsel, David Gaona, could have attended the deposition in person. Defendants' counsel have bent over backwards to work with Plaintiffs' counsel to schedule and reschedule Plaintiffs' depositions when issues have arisen. However, given the Court's Order that only truly extraordinary circumstances would warrant any further extensions of deadlines, Defendants' counsel did not feel comfortable simply requesting an additional extension of deadlines by stipulation. That is why Defendants' counsel suggested that Plaintiffs file an unopposed motion for protective order or request a telephonic conference with the Court. Plaintiffs, instead, chose simply to not appear for their depositions, which necessitated Defendants' counsel appearing for the depositions and Defendants incurring attorneys' fees and costs for her to do so, and now filing this motion.

## II.   LEGAL ARGUMENT.

### A.   Defendants are Entitled to Sanctions for Plaintiffs' Failure to Disclose that Plaintiff David Khalaj Filed for Social Security Disability Benefits Claiming that He Has Been Unable to Work Since July 2018.

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides as follows regarding a party's failure to disclose information or supplement an earlier discovery response:

11

>    (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
>    (B) may inform the jury of the party's failure; and
>
>    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The orders listed in Rule 37(b)(2)(A)(i)-(vi) include:

>    (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
>    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
>    (iii) striking pleadings in whole or in part;
>
>    (iv) staying further proceedings until the order is obeyed;
>
>    (v) dismissing the action or proceeding in whole or in part;
>
>    (vi) rendering a default judgment against the disobedient party;

Pursuant to Fed. R. Civ. P. 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." The Ninth Circuit has held, "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery." Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983), citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976). In fact, sanctions against a party "may be imposed even for negligent failure to provide discovery." Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1343 (9th Cir. 1985), citing Lew v. Kona Hospital, 754 F.2d 1420, 1427 (9th Cir. 1985); Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir.1978). In the context of a sanction under Rule 37(c)(1), the party facing sanctions bears the burden of proving that its failure to disclose or supplement discovery with the required information

was substantially justified or is harmless. Torres v. City of L.A., 548 F.3d 1197, 1213 (9th Cir. 2008). Further, the Ninth Circuit has held that district courts have particularly wide discretion to issue sanctions under Rule 37(c)(1) because it is a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001), quoting Fed. R. Civ. P. 37 advisory committee's note (1993).

The Ninth Circuit Court of Appeals has held that the sanction of precluding a party from producing evidence to support a claim for damages or dismissing a particular claim for damages is appropriate when a party has failed to disclose evidence related to those damages. See Yeti by Molly, Ltd., 259 F.3d at 1105-07. Pursuant to Rule 37 and district courts' inherent authority to impose sanctions, district courts in the Ninth Circuit have dismissed specific claims and awarded monetary sanctions when a party has concealed evidence that is relevant to the claim. See, e.g., Am. Unites for Kids v. Lyon, 2015 WL 9412099, at *10 (C.D. Cal. Dec. 21, 2015) (dismissing the plaintiff's "prayer for costs, expert witness fees, testing costs, and attorneys' fees" as a sanction for concealing its efforts to conduct environmental testing of the defendant's property outside of authorized discovery in the case and also awarding the defendant's their attorneys' fees and costs for bringing the motion for sanctions); U.S. ex rel. Berglund v. Boeing Co., 835 F. Supp. 2d 1020, 1055–56 (D. Or. 2011) (dismissing the plaintiff's retaliation claim against the defendant after he deleted and altered e-mails and destroyed hard drives that contained information relevant to his claim for retaliation, and also awarding the defendant monetary sanctions based on the plaintiff's failure to produce the evidence). District courts have also excluded evidence of damages or dismissed claims for certain categories of damages pursuant to Rule 37(c)(1) for a party's failure to disclose evidence regarding those damages before the close of discovery. See Jackson v. Asotin Cty., 2019 WL 1245786, at *10 (E.D. Wash. Mar. 15, 2019) (excluding Plaintiff's claim for certain categories of damages based on Plaintiff's failure to disclose evidence to support these claims for damages before the close of discovery); Ketab Corp. v. Mesriani Law Grp., 2016 WL 5921767, at *3 (C.D. Cal. Mar. 18, 2016) (excluding the

plaintiff's evidence regarding damages because the plaintiff failed to disclose its computation of damages before the close of discovery); Dayton Valley Investors, LLC v. Union Pac. R. Co., 2010 WL 3829219, at *5 (D. Nev. Sept. 24, 2010) (precluding the defendant from presenting evidence regarding damages to support its counterclaim because the defendant failed to disclose the evidence before the close of discovery).

By responding to Interrogatory No. 19 the way he did, Plaintiff Khalaj actively concealed the fact that he has apparently been totally disabled and unable to work since July 2018, and that any decrease in income between July 2018 and the present was therefore due to his disability, and not any choice by former real estate clients to discontinue their business relationships with Khalaj. The concealment of this critically important information is not substantially justified or harmless. Indeed, Defendants cannot fathom any justification for failing to disclose this information, let alone substantial justification, other than to pursue a contrived damages claim. It is important to note that it was not Plaintiffs who even disclosed this information, but instead Defendants acquired the information by chance when they were taking the deposition of the disability attorney who Defendants were advised had assisted Plaintiff Youmaran in getting her longstanding disability benefits reinstated. If Plaintiff Khalaj truly has been unable to work since July 2018—as he represented to the Social Security Administration in his application for disability benefits—Plaintiffs knew this at the time they provided their answers to Interrogatory No. 19 in February 2020, stating that Khalaj was presently employed as a realtor. Plaintiffs also knew it at the time they disclosed the expert report of John Foltz in March 2020—claiming damages to Khalaj's real estate business of over $1.3 million for unearned commissions from January 1, 2016 through the end of 2021. Indeed, before Mr. Foltz's deposition in August 2020 (four months after Plaintiff Khalaj filed his application for disability), Plaintiffs did not provide any additional information to Mr. Foltz about Khalaj's alleged inability to work as a realtor, and Mr. Foltz testified that he was not aware of any health issues that prevented Khalaj from working. It should be noted that Plaintiff Khalaj was present for much of Mr. Foltz's deposition.

This failure to disclose is also not harmless because Defendants did not learn of Khalaj's claimed disability until December 23, 2020, just three and one-half weeks before the close of fact discovery in this case. Plaintiffs have grossly misrepresented their most significant claim for damages through discovery responses and disclosure of their expert. Defendants are now left with less than three weeks to conduct discovery, having already spent a substantial amount of time and money on defending against Plaintiffs' claim for damages to Khalaj's earnings in his real estate business. Defendants did not have the opportunity to question Mr. Foltz about Plaintiff Khalaj's claim that he has been totally disabled and unable to work since July of 2018. Therefore, Defendants have been prejudiced by Plaintiffs' failure to disclose Khalaj's claimed disability and inability to work and this failure is not harmless. As a result of Plaintiffs' violation of Rule 37(c)(1), Plaintiffs' claim that David Khalaj's income was affected by his arrest should be dismissed. In the event this claim is not dismissed, the Court should permit Defendants to re-open the deposition of Plaintiffs' expert, John Foltz, at Plaintiffs' expense, including the preparation and taking of the deposition and John Foltz's fee for appearing at the deposition. The Court should also permit Defendants to conduct discovery, <u>at Plaintiffs' expense,</u> directed at Plaintiff Khalaj's claim of disability (this includes subpoenaing Plaintiff Khalaj's disability file from the Social Security Administration).

**B.     Defendants Are Entitled to Sanctions for Plaintiffs' Failure to Appear for their Depositions.**

Under Fed. R. Civ. P. 37(d), the Court may "order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for [his or her] deposition." Further, a party's failure to appear for his or her deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). As a sanction for failure to appear for a properly noticed deposition, the Court may issue an order including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

15

>    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
>    (iii) striking pleadings in whole or in part;
>
>    (iv) staying further proceedings until the order is obeyed.

Fed. R. Civ. P. 37(b)(2)(A), 37(d)(3). "Instead of or in addition to these sanctions, the court **must require** the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. Civ. P. 37(d)(3) (emphasis added).

The Ninth Circuit has held that a district court's award of sanctions against a party for failing to appear at his deposition was appropriate, even when the opposing party's counsel was willing to work with the party to reschedule the deposition and when the party's deposition was ultimately taken. Henry v. Gill Indus., Inc., 983 F.2d 943, 947 (9th Cir. 1993). This is because when a party fails to appear for his deposition, the opposing party is prejudiced by that failure and later compliance does not "cure the effects" of the failure to appear. Id.; see also G-K Properties v. Redevelopment Agency of San Jose, 577 F.2d 645, 647-48 (9th Cir. 1978).

One of the appropriate sanctions for a party's failure to appear for his or her deposition, in addition to an award of the attorneys' fees and costs incurred by the failure to appear, is an extension of the opposing party's deadline to disclose expert witnesses and other affected case deadlines. See, e.g., Raygoza v. City of Fresno, 297 F.R.D. 603, 609 (E.D. Cal. 2014) (ruling that the plaintiffs' failure to appear for their depositions "have prevented, and continue to prevent" the defendants from providing the necessary information to their expert so he could prepare his report, and ruling that the Defendants' expert disclosure deadline be extended). In Rayoza, the court also awarded against the plaintiffs and their counsel, jointly and severally, the attorneys' fees the defendants incurred for attending the depositions which did not take place, the costs of the court reporter, and the attorneys' fees incurred in bringing the motion for sanctions. Id. at 610.

1  In this case, Defendants have been prejudiced by Plaintiffs' failure to appear for their depositions because their deadline to disclose expert witnesses is now just three weeks away and the Court ordered that the case deadlines would not be extended further "absent truly extraordinary circumstances." Without Plaintiffs' deposition testimony, Defendants' experts cannot prepare their expert reports. Defendants have accommodated Plaintiffs each time Plaintiffs have requested that their depositions be postponed. However, despite Defendants' efforts to be as cooperative as possible, Plaintiffs refused to file a motion for protective order with the Court or request a telephonic conference to resolve the issues with the Court before the scheduled depositions. Instead, Plaintiffs simply failed to appear, which caused Defendants to incur attorneys' fees and costs. Now, the only way Defendants have to prevent any further prejudice to their defense of this case is to bring the instant motion.

Defendants request an Order from the Court that Plaintiff Yuomaran appear for her deposition via Zoom prior to the current deadline for completing depositions of January 18, 2021, and that Plaintiff David Khalaj appear for and complete his deposition by January 29, 2021. As a sanction for Plaintiffs' failure to appear for their depositions, Defendants are making the very reasonable request that the Court extend the deadline for Defendants to complete the additional discovery outlined above to January 29, 2021, and to disclose their expert witnesses to February 26, 2021, and that the Court award their attorneys' fees and costs incurred as a result of Plaintiff's failure to appear at the depositions and in bringing this motion. These requested sanctions are warranted and reasonable in light of Plaintiffs' failure to appear for their depositions.

### III. CERTIFICATION OF GOOD FAITH CONSULTATION.

Even though it is not clear that a certificate of consultation is required before bringing a motion for sanctions for a party's failure to appear for his or her deposition pursuant to Fed. R. Civ. P. 37(d),[4] undersigned Defendants' counsel certify that they conferred in good faith

---

[4] There is no requirement under Fed. R. Civ. P. 37(c) for a party to consult with the other party before moving for sanctions on the basis of untimely disclosure of evidence. See Dayton Valley Investors, LLC, 2010 WL 3829219, at *2.

with Plaintiffs' counsel prior to the date of the scheduled depositions and requested that Plaintiffs file a motion for protective order and request to extend the deadline for Defendants to disclose experts. As set forth above, given the Court's Order that any further extension of case deadlines would be granted only for "truly extraordinary circumstances," counsel for Defendants were not comfortable filing a stipulation to extend the case deadlines. Also, as set forth above, counsel for Plaintiffs refused to file a motion for protective order and/or request a telephonic conference with the Court the day before the scheduled depositions. Because Plaintiffs did not raise the issue with the Court before the time of the scheduled depositions, Defendants' counsel had no choice other than to appear for the depositions as scheduled, causing Defendants to incur attorneys' fees and costs. Therefore, counsel for Defendants certify that they attempted in good faith to resolve this issue before filing a motion for sanctions, but were unable to do so.

## IV.   CONCLUSION.

For the reason set forth above, Defendants request that the Court order the following sanctions against Plaintiffs:

(1)   dismissing Plaintiffs' damages claim based on an alleged loss of real estate transactions due to Plaintiff David Khalaj's arrest (in the event this claim is not dismissed, permitting Defendants to re-open the deposition of Plaintiffs' expert, John Foltz, at Plaintiffs' expense, including the preparation for and taking of the deposition and John Foltz's fee for appearing at the deposition);

(2)   permitting Defendants to conduct discovery <u>at Plaintiffs' expense</u> directed at Plaintiff Khalaj's claim of disability (this includes subpoenaing Plaintiff Khalaj's disability file from the Social Security Administration);

(3)   requiring Plaintiff Juliet Youmaran to appear for and complete her continued deposition via Zoom before the current deadline for completing discovery of January 18, 2021, and requiring Plaintiff David Khalaj to appear for and complete his deposition by January 29, 2021;

(4) extending the deadline for Defendants to complete the foregoing discovery to January 29, 2021 and to disclose their expert witnesses to February 26, 2021; and

(5) awarding Defendants the attorneys' fees and costs they incurred as a result of Plaintiffs' non-appearance at their depositions and in bringing this motion.

DATED this 31st day of December, 2020.

**BERKE LAW FIRM, PLLC**


By   s/ Jody C. Corbett
    Lori V. Berke
    Jody C. Corbett
    Attorneys for Defendants City of Phoenix, Lillian (Fine) Melander, Scott Melander, Michael Green, and Todd Blanc

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David F. Gaona
Gaona Law Firm, PC
3101 N. Central Ave, Suite 720
Phoenix, AZ 85012
david@gaonalaw.com

Marc S. Nurik
Richard Lazenby
Dana Zokaeim
VICTOR RANE
9350 Wilshire Boulevard, Suite 308
Beverly Hills, CA 90212
mnurik@victorrane.com
rlazenby@victorrane.com
dzokaeim@victorrane.com

  s/ Jody C. Corbett