# EXHIBIT 1

RECEIVED
JAN - 3 2020
BY:_____

GAONA LAW FIRM
A PROFESSIONAL CORPORATION
3101 NORTH CENTRAL AVE, SUITE 720
PHOENIX, ARIZONA 85012
——————
(602) 230-2636  Fax (602) 230-1377
david@gaonalaw.com; docket@gaonalaw.com

David F. Gaona, State Bar No. 007391
Attorneys for Plaintiffs David Khalaj
and Juliet David Youmaran

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj and Juliet David Youmaran, a married couple, <br><br> Plaintiffs, <br><br> vs. <br><br> City Of Phoenix, Arizona, a municipal corporation; Lillian Fine and Jane Doe Fine, husband and wife; Scott Melander and Jane Doe Melander, husband and wife; Sgt. Green and Jane Loe Green, husband and wife; Todd Blanc and Jane Roe Blanc, husband and wife, <br><br> Defendants. | CIV-17-01199-PHX-GMS-JZB <br><br> **PLAINTIFFS DAVID KHALAJ AND JULIET YOUMARAN'S RESPONSES TO DEFENDANT CITY OF PHOENIX'S INTERROGATORIES** |

Plaintiffs David Khalaj and Juliet Youmaran, through undersigned counsel, and pursuant to Rule 33, *Federal Rules of Civil Procedure*, respond to Defendant City of Phoenix's Interrogatories as follows:

## INTERROGATORIES

## INTERROGATORY NO. 1:

State your full name, current address, telephone number, social security number and date of birth; any names by which you have been known in the past; and, for any other

**INTERROGATORY NO. 7:**

Identify which City of Phoenix police officer or officers placed you in handcuffs on January 1, 2016.

**RESPONSE TO INTERROGATORY NO. 7:**

**Defendants Scott Melander and Lillian Fine placed handcuffs on the Plaintiffs on January 1, 2016.**

**INTERROGATORY NO. 8:**

Describe in detail the force you contend was used against you on January 1, 2016 by each City of Phoenix police officer whom you have named as a Defendant in this lawsuit.

**RESPONSE TO INTERROGATORY NO. 8:**

**Defendant Scott Melander used force on a continuing basis relative to Plaintiff Khalaj on January 1, 2016. With respect to cuffing Mr. Khalaj, Defendant Melander pulled on the cuffs to move Mr. Khalaj's person, pulled on the cuffs to drag him, and together with pulling on the cuffs and applying pressure to his arm, used unnecessary force on the person of Plaintiff Khalaj. With respect to Plaintiff Youmaran, Defendant Fine threatened, on a continuing and non-stop basis, to use force and engage in forceful activity against the person of Plaintiff Youmaran, but did not physically use force against her.**

GAONA LAW FIRM
3101 North Central Avenue – Suite 720
Phoenix, Arizona 85012

8

**INTERROGATORY NO. 12:**

As to each medical practitioner (as that term is defined herein) who has examined or treated you for any of the injuries or symptoms described in Interrogatory No. 10 above, state

    a.    The name, address and specialty of each medical provide

    b.    The date of each examination or treatment.

    c.    The physical, mental or emotional condition for which each examination or treatment was performed.

**RESPONSE TO INTERROGATORY NO. 12:**

**Will be supplemented; see medical records attached to Response to Request for Production of Documents.**

Dated this _31st_ day of December, 2019.

                    **GAONA LAW FIRM**

                    David F. Gaona
                    3101 North Central Avenue, Suite 720
                    Phoenix, Arizona 85012
                    Attorneys for Plaintiffs
                    David Khalaj and Juliet David Youmaran

Original of the foregoing mailed this _31st_ day of December, 2019 to:

Lori V. Berke, Esq.
Jody C. Corbett, Esq.
Berke Law Firm, PLLC.
1601 North 7th Street, Suite 360
Phoenix, Arizona 85006
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendant City of Phoenix

       _/s/ Barbara J. Kuhns_

GAONA LAW FIRM
3101 North Central Avenue – Suite 720
Phoenix, Arizona 85012

11

EXHIBIT 2

MAR 1  2020

BY:_____

1

**GAONA LAW FIRM**
A PROFESSIONAL CORPORATION
3101 NORTH CENTRAL AVE, SUITE 720
PHOENIX, ARIZONA 85012

(602) 230-2636  Fax (602) 230-1377
david@gaonalaw.com; docket@gaonalaw.com

David F. Gaona, State Bar No. 007391
Attorneys for Plaintiffs David Khalaj
And Juliet David Youmaran

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj and Juliet David Youmaran, a married couple<br><br>Plaintiffs,<br><br>vs.<br><br>City Of Phoenix, Arizona, a municipal corporation; Lillian Fine and Jane Doe Fine, husband and wife; Scott Melander and Jane Doe Melander, husband and wife; Sgt. Green and Jane Loe Green, husband and wife; Todd Blanc and Jane Roe Blanc, husband and wife,<br><br>Defendants. | CIV-17-01199-PHX-GMS-JZB<br><br>**PLAINTIFFS' DISCLOSURE OF DESIGNATED EXPERTS** |

Plaintiffs David Khalaj and Juliet David Youmaran ("Plaintiffs"), pursuant to Rule 26(a)(2), *FRCP,* make their expert disclosure as follows:

1.  Thomas Streed, Ph.D., 10645 North Tatum Boulevard, Suite 200, Phoenix, Arizona 8028.   (800) 598-6854.   Dr. Streed's initial report (September 6, 2019) and supplementary report (March 13, 2020), are attached hereto and detail facts and opinions consistent with Rule 26, *FRCP.*

2. John Foltz, MBA, CRB, Realtor Emeritus, 9830 North 79th Place, Scottsdale, Arizona 85258. Attached hereto is the expert of John Foltz dated February 10, 2020, containing facts and opinions consistent with Rule 26, *FRCP*.

GAONA LAW FIRM
3101 North Central Avenue – Suite 720
Phoenix, Arizona 85012

GAONA LAW FIRM
3101 North Central Avenue – Suite 720
Phoenix, Arizona 85012

Dated this 13th day of March, 2020.

**GAONA LAW FIRM**

David F. Gaona
3101 North Central Avenue, Suite 720
Phoenix, Arizona 85012
Attorneys for Plaintiffs
   David Khalaj and Juliet David Youmaran

Original mailed this
13th day of March, 2020, to:

Lori V. Berke, Esq.
Jody C. Corbett, Esq.
Berke Law Firm, PLLC
1601 North 7th Street, Suite 360
Phoenix, Arizona 85006
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendant City of Phoenix

_____/s/ Barbara J. Kuhns_____

GAONA LAW FIRM
3101 North Central Avenue – Suite 720
Phoenix, Arizona 85012

4

**EXPERT OPINION**
**In the Matter of Khalaj v. City of Phoenix**

John Foltz, REALTOR Emeritus
9830 N. 79th Pl.
Scottsdale, AZ 85258
johnfoltz@cox.net,  602-882-0007

Introduction

I have been asked to review, examine and opine on the impact , if any, of David Khalaj's arrest on or about January 1, 2016 relative to his business interests in representing pro athletes, coaches and other professionals in real estate endeavors.  By way of introduction, please find my resume/CRV attached to this document.  In addition, and especially, I will be relying on over 25 years of personal study with productivity experts and my own coaching and interaction with REALTORS in groups and one on one.  Interviews and coaching with top producers to trouble shoot lack of productivity has been especially enlightening.  This includes identifying negative outside impacts on their self image and professional withdrawal as well as highlighting positive personal images to generate charisma with target audiences.  Outside negative events can (1) disrupt a top producer's self image as well as (2) impact how they are seen by otherwise loyal clientele.  The emphasis on character, reputation, and resilience is paramount.

Sources of my personal study in this area include, but are not limited to, The Brian Buffinni Training Seminars, The John Maxwell Leadership Series, People Synergistically Involved Studies and Seminars, The Pacific Institute Studies on Psychopictography, and the Larry Kendall Ninja Relationship Sales Systems.  In addition, I co-taught over 20 seminars on behalf of The Arizona School of Real Estate and over 40 workshops entitled The Master's Series to focus on self image, relationship connections, and professional image as seen by others.

In research on this matter, I additionally connected with and interviewed Denise L. White, who is the CEO and Founder of the EAG Sports Management, a company that specializes in working with professional athletes in building a positive personal brand and avoiding people and situations that might negatively reflect on their brand or off the field reputation. Athletes earn income as athletes, but also rely on their positive personal brand and public perception for endorsement and advertising revenue.

In preparation for this opinion, I also reviewed significant data sources regarding the real estate market as well as specific transactions.  These sources included, but not limited to, The Cromford Report, Arizona Regional Multiple Listing Service, Trulia, Zillow, The Phoenix Business Journal, and The Maricopa County Recorder's Records through Monsoon.

I have also reviewed various court filings and documents provided by counsel including airport video, health records, disclosure statements by both Plaintiff and Defendant, Complaints and Amended Complaints, Interrogatory Responses, etc.  These provided important background information regarding elements of the case in which I claim no expertise.  However, these did give me a sense of the intensity of what I will later refer to as the big event or the arrest.

Additionally, I can reflect on my own personal experience.  I was, myself, falsely and publicly accused in a past civil matter and know how it affected me, personally, and how it affected otherwise long term and loyal business relationships.  It impacted my business in a big way, both in how I felt and in how others seemed to feel about me.  After 4 years, my name was cleared, but the damage done during that time could not be undone.

Khalaj 00899

In the last four years, I have served as an expert in only one matter in which I testified. This was in 2019, Chicago Title v. Rissi in Maricopa County Superior Court (CV-2016-054177). Prior to the last four years, I served in several other matters as an expert. My hourly rate as a retained expert in professional matters is $350 per hour.

Full disclosure: I have known David Khalaj professionally for more than 20 years. He was a licensed agent with Realty Executives during the time I was the Designated Broker and President of the Company. I supervised and reviewed his transactions for more than 10 years. I conducted training sessions and workshops in which he participated, and attended client/ agent relationship events with him. Included in those meetings were meetings with professional athletes, coaches, and their families. We connected regularly during that time as professional associates, not as social or personal friends. I have no difficulty in providing assurance that I will be objective and unbiased in offering the following opinion.

### David Khalaj's Business Development

David Khalaj's business was intentionally built on relationships. He saw a way to be a mentor to those in need of his guidance, and seemed to thrive on the satisfaction of being trusted and helpful to those who could benefit from his expertise. He is personal, by nature, and gravitates to others as a mentor, caretaker, and servant-leader. Beginning in the late 1990's, he designed his personal office in our company as a "hangout" for young ball players with lounge chairs, TV, billiard table, and places to relax. His office is filled with sports memorabilia, signed jerseys, and thank you notes from players, coaches, and others. It was common for professional players to be there just to hang out. He built his central growth strategy on being like a caring uncle to young men who were, for the most part, a long way from home and in need of someone more experienced they could trust. And, from my observations over a long period of time, his own business energy is powered by being appreciated and held in high esteem.

### Enter Young Professional Athletes

Denise L. White is the CEO and Founder of the EAG Sports Management, a company that specializes in handling those aspects of an athlete's career that impact their personal brand, especially dealing with their relationships off the field. In conversations with Ms. White, she confirms what we might know intuitively. These guys are trained to be the fastest and fiercest men on the field, but spend no time learning how to make wise choices. Professional athletes are generally advised by their teams and by agents like Ms. White to select with whom they do business carefully and AVOID ASSOCIATING WITH OTHERS ACCUSED OF WRONGDOING. This advice, when followed, increases the value of their personal brand which can be the source of considerable income from endorsements and significant celebrity status in the community.

### The Critical Relationship

So, David Khalaj caters to the young athletes like a protective uncle, especially in the real estate world, and the athletes feel comfortable with the relationship and have no concerns about being associated with someone whose image will hurt their personal brand. They know and steadily talk to other players and coaches sharing thoughts about with whom to connect and who it is to avoid.

Khalaj 00900

A Big Event January, 2016

After travel, David Khalaj and his family were detained in the airport and subsequently arrested. I offer no opinions about the appropriateness of the behaviors of the parties at that time as I am not an expert in that element of this matter. News of the arrest became public quickly including mug shots that were taken during that time. The news also traveled very quickly amongst those who know David Khalaj or who have done business with him or know someone else who has done business with him. This is especially true in this world of widespread use of social media. The public often assumes guilt by virtue of accusation and arrest. As I understand it, that legal matter has been resolved, but the past and future impact on David Khalaj's ability to do business remains. My role here is to opine as to the impact of these events, on David Khalaj, his clients, and his business income.

Expected Impact on David Khalaj

In an interview with Mr. Khalaj, he has confirmed that he has lost a number of transactions and referral opportunities with existing and otherwise loyal players and coaches due to the arrest and the information being shared widely amongst his sphere of influence. He has shared the baseline transaction history with various players and couches as identified in the attached spreadsheets for the period 2013-2015.

David Khalaj is a "servant leader" style salesperson.  Servant-leader-style salespersons depend on their own self image and skills to be a gift to others.  They frequently describe their motivation and satisfaction as being "well thought of" by their clients and others with whom they relate.  As a fellow professional with frequent contact over a long period of time, I know that "The Event" and it's publicity would probably impact his business in a significant way. Additionally, the time and energy in attending to the aftermath in his family and in legal defense of such an event would, naturally, be a huge distraction.  Evidence of that could be reflected in a reduced generation of new business or pro-active follow up on referrals.  The accusations directed toward David Khalaj were so serious, as Real Estate licensees, that The Arizona Department of Real Estate would be likely to revoke the license of David Khalaj and destroy his ability to continue in his business at all.  The impact of this type of event can be long lasting and destructive.  In terms of professional image, it cannot be completely "undone."

Impact of The Big Event on Players

In an interview with David Khalaj, he described conversations with some of the most loyal of his player/clients who had seen the news and would, as a result, not do future business with him. This is unfortunate, but completely real and understandable.  And, indeed, even players and coaches who had done business with David in the past, moved their business elsewhere. This has been confirmed in examining transaction data from Arizona Regional Multiple Listing Service as well as the Maricopa County Recorders Records.  This separation from David Khalaj was not unusual. His business was the result of a positive personal relationship which now appeared to be problematic.  The players and coaches were, understandably, protecting themselves and following advice given them not only by team staff and coaches, but also by sports agents as described in phone interview with Denise White of EAG Sports Management. EAG specializes in "fixing" professional athlete's personal branding challenges.

Khalaj 00901

So What?

All of the above is based my observations and experience with hundreds REALTORS and their celebrity clients over more than 25 years. I have no formal training in psychology or therapy, but do feel very aware of those reactions I have described above. The remainder of this opinion will be to attempt to identify the monetary business cost which resulted from both the impact on David Khalaj as a REALTOR and the impact on the players and coaches and others as past or potential clients.

Khalaj Player/Coach Missed Transactions and Missed Commissions

Attached is a spreadsheet entitled Khalaj Player/Coach Missed Transactions. Let me walk you through the analytic process I followed to monetize the change in David Khalaj's business.

In the first column, I have listed Player/Coach transactions in dollar sales volume done with clients prior to January, 2016, the month of the arrest. Those properties purchased would have been eventually sold through David, had the relationships not been interrupted. So, in the 2016, 2017, 2018, 2019, and 2020 columns, I have inserted transaction amount for sales that actually did happen from those clients on those properties, but through a different REALTOR, not through David Khalaj. This information has come from both Arizona Regional Multiple Listing Service and confirmed through Maricopa County Recorder records via Monsoon. In other words, these clients avoided David and went to someone else. I used an average for 2020 and 2021, since those years are not yet complete, and chose to arbitrarily end the adjustment after 2021. That end date is arbitrary. David Khalaj's loss of income and reputation will go on for many years beyond that. The time for recovery varies greatly and is hard to predict.

At the bottom of the first column, I have calculated the average amount of sales from Players/ coaches for the previous three years to use as a benchmark for future years. According to Trulia and other market tracking sources, the median sales price in the marketplace was increasing by an amount in excess of 6% per year so, for future years, this average would require adjustment. You will find a sample of Trulia's information in a chart attached

In the 2016 column, David Khalaj actually did an $870,000 transaction with a player/coach, but not with others, so it fell below the previous average by $571,000.

In 2017, there were $1,236,034 in sales that were from players/coaches with whom David Khalaj had a relationship and previous sale, but they also went to someone else in avoidance of David Khalaj. Similarly, in 2018, 2019, and 2020 (so far). For 2020 and 2021, I simply used an average of the previous four years.

The Total Missed Sales from players/coaches in this analysis, is $16,366,951. Based on past performance, less than half of those sales would have involved another agent as a co-broker. So, to use round numbers, let's just assume that half DO involve another agent and the other half DO NOT. So, David's commission on the first half would be 3% of the sales price and, on the second half, would be 6% of the sales price.

After doing the math, the lost commission from Players/Coaches for the period between 2016 through 2021 is $736,513. This is ONLY between 2016 and through 2021 and does not take into account that the impact may extend beyond that time. And, this does not account for the over 6% growth in the median sales price of homes over this period of time. A very conservative estimate, and my professional opinion of the lost income is **$736,513.**

Khalaj 00902

Non Player/Coach Missed Transactions and Missed Commissions

See the spreadsheet entitled Non Player Coach Missed Commission, Page One and Page Two. Note that, for 2013 - 2015, the Pre Arrest Sales are recorded in each column. From that is subtracted the Player Coach transactions for each year, to arrive at a net number for non player coach transactions. The average, over those years, is $11,019,000 in sales to persons other than players or coaches. The future amounts of these transactions are impacted by two things. First, the image projected to the public, including current clients, by the negative news. Second, by whatever level of distress and reluctance to extend himself felt by David Khalaj. I am only going to deal with the dollar value of the results, here.

So, for each year after the arrest, from 2016 through 2021, I assumed David Khalaj would have done the average of the previous three years. Then I subtracted his actual production for the years 2016 - 2019 to arrive at a deficit or shortfall for each year. Since 2020 and 2021 numbers are not yet in, I averaged the shortfalls for 2016 - 2019 and extended that average for 2020 and 2021. When totaled, the result is a very conservative estimate and my professional opinion of the lost sales to be $14,174,850.

As before, I calculated half of that at 3% commission and half at 6%. After doing the math, the lost commission from Non Players/Coaches for the period between 2016 through 2021 is $637,868. This is ONLY between 2016 and 2021 and does not account for any impact beyond that time. Additionally, this does not account for the over 6% growth in the median sales price of homes over this period of time. A very conservative estimate and my professional opinion of David Khalaj's lost income for non player / coach sales is **$637,868.**

Total of Player/Coach and Non Player/Coach Components

The total impact on David Khalaj's income is the sum of the lost income from each of the two components analyzed above. $736,513 + $637,868 = $1,374,381

Conclusion: The sum of Player/Coach lost income and Non Player/Coach lost income

In my professional opinion, based on my education and years of experience in working with and coaching hundreds of professional salespeople, and based on my personal knowledge of the professional athlete market, and based on the assumptions, facts, and calculations in this document, the overall impact on Mr. Khalaj's income between 2016 and 2021 is **$1,374,381.**

Khalaj 00903

# JOHN FOLTZ, MBA, CRB, REALTOR EMERITUS

**9830 N. 79th Pl, Scottsdale, AZ 85258, johnfoltz@cox.net,602-882-0007**

**MBA, University of Wisconsin, Real Estate & Finance**

### Real Estate Coach and Consultant
Risk management
Business Development and Productivity Coach
Real Estate Investment & Management
Expert Witness and Arbitration Advocate

### Instructor, Real Estate and Business
Real Estate Law, Contract Writing, Environmental Law, Fair Housing, Commissioner's Rules, Agency Law, Business and Personal Development

### Arizona Association of REALTORS
2010 Distinguished Service Award
Past President, Board of Directors, Executive Committee
REALTOR of the Year Recipient
Professional Standards and Ethics Instructor
Chair and panel participant in arbitration and ethics hearings
Participated in drafting AAR transaction documents
  Purchase Contract and Receipt  Commercial Purchase contract

### National Association of REALTORS
Board of Directors      Diversity (Fair Housing) Committee
Chairman, Strategic Planning Committee  Large Broker's Advisory Group

### Chairman Emeritus, The Care Fund
Providing support for Families when their Children are in the Hospital

### Project Assignments 2010 - 2019, Business Development
Russ Lyon Sotheby's International Realty, 2018, 2019
First Arizona Title, 2018
True North Masters series, 2016, 2017
Homeowners Financial Group, 2014, 2015
Lawyers Title, 2013
Various Expert Witness and Arbitration Assignments

### President, REALTY EXECUTIVES, 1999 - 2010
### Designated Broker, REALTY EXECUTIVES, 1989 - 2010
Largest real estate firm in Arizona
Supervisor of 1500 licensees
Review and critique all transaction documents (over 250,000 transactions since 1990)
Mediate, Arbitrate, and Negotiate solutions to transaction problems and complaints

### Direct real estate sales experience, REALTY EXECUTIVES, 1978-1989
Commercial Property    Residential Property
Property Management    Vacant Land
Syndication        Tax Deferred Exchanges

Khalaj 00904

## Khalaj Player/Coach Missed Transactions

| | Player/Coach 2013 Sales | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Total Missed Sales | 1/2 @ 3% 1/2 @ 6% |
|---|---|---|---|---|---|---|---|---|---|
| Pelican/Bettcher | $406,000 | | | $465,800 | | | | | |
| Coconino | $514,900 | | | | | | | | |
| Lynx/Goodwin | $840,000 | | | | $1,042,500 | | | | |
| Marina/Arians | $1,200,000 | | | $1,500,000 | | | | | |
| 2014 | | | | | | | | | |
| Vine/Arians | | | | $595,000 | | | | | |
| 2015 | | | | | | | | | |
| Warcloud/Jupati | $1,365,000 | | | | | $1,450,000 | | | |
| Three year Total | $4,325,900 | | | | | | | | |
| Average/year | $1,441,967 | $1,441,967 | | | | | | | |
| Mead/Nikels | | $870,000 | | | | | | | |
| Ravenswood/Berra | | | $305,000 | | | | | | |
| Colt CT/Berra | | | $931,034 | | | | | | |
| Hummingbird/Fitzgerald | | | | | $4,500,000 | | | | |
| 90th Way/Fitzgerald | | | | | $1,000,000 | | | | |
| | | | | | | (average) | (average) | | |
| Total known missed | | $571,967 | $1,236,034 | $2,560,800 | $6,542,500 | $2,727,825 | $2,727,825 | $16,366,951 | |
| Commission on Missed 50/50 one side/Two Side | | | | | | | | | |
| One Side @3% | | | | | | | | $8,183,476 | $245,504 |
| Two Side @6% | | | | | | | | $8,183,476 | $491,009 |
| Total Missed Commission | | | | | | | | | $736,513 |

Khalaj 00905

Non Player Coach Missed Commission ..Page 0ne

| Sales | 2013 | 2014 | 2015 | 3 Year Average | 2016 | 2017 |
|---|---|---|---|---|---|---|
| Pre Arrest | $15,255,000 | $10,692,000 | $11,031,000 | $12,636,000 | | |
| Excluding Players | $2,555,000 | | $1,365,000 | | | |
| | | | | Average | Average | Average |
| Net Pre Arrest | $12,700,000 | $10,692,000 | $9,666,000 | $11,019,000 | $11,019,000 | $11,019,000 |
| Post Arrest | | | | | $8,863,500 | $9,378,150 |
| Deficit | | | | | $2,155,500 | $1,640,850 |
| | | | | | | |
| 1/2 @ 3% | | | | | | |
| 1/2@6% | | | | | | |
| | | | | | | |
| Total Missed Commission | | | | | | |
| | | | | Continued on Page Two | | |

*Khalaj 00906*

## Non Player Coach Missed Commissions - Page 2

| Sales | 2018 | 2019 | 2020 | 2021 | Total | Missed Commission |
|---|---|---|---|---|---|---|
| **Pre Arrest** | Non Player Coach Missed Commission | | | | | |
| **Excluding Players** | | | | | | |
| | Average | Average | Average | Average | | |
| **Net Pre Arrest** | $11,019,000 | $11,019,000 | $11,019,000 | $11,019,000 | | |
| **Post Arrest** | $10,155,900 | $6,228,600 | $8,656,500 | $8,656,500 | | |
| **Deficit** | $863,100 | $4,790,400 | $2,362,500 | $2,362,500 | $14,174,850 | |
| | | | | | | |
| **1/2 @ 3%** | | | | | $7,087,425 | $212,623 |
| **1/2@6%** | | | | | $7,087,425 | $425,246 |
| | | | | | | |
| **Total Missed Commission** | | | | | | **$637,868** |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Khalaj 00907



Khalaj 00908

The previous ten pages of

EXPERT OPINION OF JOHN FOLTZ
February 10, 2020
In the Matter of Khalaj v. City of Phoenix

Have been reviewed by me and submitted this date

John Foltz
9830 N. 79th Pl
Scottsdale, Arizona 85258
johnfoltz@cox.net
602-882-0007

Khalaj 00909

EXHIBIT 3

1
2
3
4
5
6

Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax:   (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com

7
8

Attorneys for Defendants City of Phoenix, Lillian
    (Fine) Melander, Scott Melander, Michael Green
    and Todd Blanc

9

10

11

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

12
13

David Khalaj and Juliet David Youmaran, a
married couple,

NO. CV-17-01199-PHX-GMS (JZB)

14
15

                    Plaintiffs,

          vs.

**DEFENDANT LILLIAN (FINE)
MELANDER'S INTERROGATORIES
TO PLAINTIFFS**

16
17
18
19
20

City of Phoenix, Arizona, a municipal
corporation, Lillian Fine and John Doe
Fine, husband and wife; Scott Melander and
Jane Doe Melander, husband and wife; Sgt.
Green and Jane Loe Green, husband and
wife; Todd Blanc and Jane Roe Blanc,
husband and wife;

21

                    Defendants.

22

23

24

25

26

27

28

        Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Lillian

(Fine) Melander, through undersigned counsel, hereby requests that Plaintiffs answer in

writing and under oath, within thirty (30) days from the receipt hereof, the following

interrogatories:

1

## INSTRUCTIONS FOR USE

A.    All information is to be divulged which is in the possession of the individual or corporate party, his/her attorney(s), investigator, agents, employees or other representatives of the named party.

B.    A "medical practitioner" as used in these interrogatories is meant to include any person who practices any form of healing arts, including but not limited to medical doctors, osteopathic physicians, psychiatrists, psychologists and counselors.

C.    Where an individual interrogatory calls for an answer which involves more than one part, each part of the answer should be clearly set out so that it is understandable.

D.    Where the terms "you," "plaintiff" or "defendant" are used, they are meant to include every individual party and separate answers should be given for each person named as a party, if requested.

E.    Where the terms "incident" or "the incident" are used, they are meant to mean the incident which is the basis of this lawsuit, unless otherwise specified.

## INTERROGATORIES

13.    As to any and all medical practitioners (as that term is defined herein) who examined or treated you in the past ten (10) years, state:

      a.    The name, address and specialty of each medical practitioner.

      b.    The date of each examination or treatment.

      c.    The physical, mental or emotional condition for which each examination or treatment was performed.

      d.    Whether the conditions have been resolved, either partially or fully.

14.    Identify each pharmacy (including specific location if it is a chain) at which you purchased medications over the past ten (10) years.

15.    State as to each item of medical expense attributable to the actions of any City of Phoenix police officer whom you have named as a defendant in this lawsuit:

a.    The name and address of the person or organization paid or owed therefore.

b.    The amount of the medical expense.

c.    The date each expense was incurred (attach copies of the itemized bills, if desired).

d.    The person or organization who paid the medical expense.

e.    The condition for which you incurred the expenses.

16.    Will you incur medical expenses in the future as a result of the actions of any City of Phoenix police officer that took place on January 1, 2016? _____ If so, state the amount of medical expenses which will be incurred in the future and state in detail the knowledge and source upon which you rely in support of this belief.

3

17.    List each injury, symptom or complaint mentioned in answer to Interrogatory No. 10 from which you suffered at any time before the incident.

18.    Do you claim to have lost any time from gainful employment as a result of the actions of any City of Phoenix police officers who are named as defendants in this lawsuit? _____ If so, state:

    a.    The specific condition upon which you claim caused the loss of time.

    b.    The amount of time lost.

    c.    The rate of pay or compensation regularly received from each such gainful employment.

    d.    If you claim any damage as a result of the time lost, the total and your method of computation.

19.    List each job or position of employment including self-employment, held by you for the past ten (10) years, stating as to each, the following:

    a.    Name and address of employment.

    b.    Date of commencement of and date of termination.

    c.    Place of employment.

    d.    Nature of employment and duties performed.

    e.    Name and address of immediate supervisor.

    f.    Rate of pay or compensation received.

    g.    Reason for separation from employment.

4

1

2

3

4

5

6

7

8

9     DATED this 26th day of November, 2019.

10                               **BERKE LAW FIRM, PLLC**

11

12

13                               By                                                                          Lori V. Berke

14                               Jody C. Corbett

15                               Attorneys for Defendants City of
                                       Phoenix, Lillian (Fine) Melander,

16                                       Scott Melander, Michael Green, and
                                       Todd Blanc

17

18   The foregoing document was mailed this
    26th day of November, 2019, to:

19

20   David F. Gaona
    Gaona Law Firm, PC

21   3101 N. Central Ave, Suite 720
    Phoenix, AZ  85012

22   Attorney for Plaintiffs

23

24

25

26

27

28

EXHIBIT 4

FEB 1 7 2020

BY:_____

GAONA LAW FIRM
A PROFESSIONAL CORPORATION
3101 NORTH CENTRAL AVE, SUITE 720
PHOENIX, ARIZONA 85012
─────────
(602) 230-2636  Fax (602) 230-1377
david@gaonalaw.com; docket@gaonalaw.com

David F. Gaona, State Bar No. 007391
Attorneys for Plaintiffs David Khalaj
  And Juliet David Youmaran

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj and Juliet David Youmaran, a married couple<br><br>              Plaintiffs,<br><br>vs.<br><br>City Of Phoenix, Arizona, a municipal corporation; Lillian Fine and Jane Doe Fine, husband and wife; Scott Melander and Jane Doe Melander, husband and wife; Sgt. Green and Jane Loe Green, husband and wife; Todd Blanc and Jane Roe Blanc, husband and wife,<br><br>              Defendants. | CIV-17-01199-PHX-GMS-JZB<br><br><br>**PLAINTIFFS DAVID KHALAJ AND JULIET YOUMARAN'S RESPONSES TO DEFENDANT LILLIAN (FINE) MELANDER'S INTERROGATORIES** |

Plaintiffs David Khalaj and Juliet Youmaran, through undersigned counsel, and pursuant to Rule 33, *Federal Rules of Civil Procedure*, respond to Defendant Lillian (Fine) Melander's Interrogatories as follows:

## INTERROGATORIES

**INTERROGATORY NO. 13:**    As to any and all medical practitioners (as that term is defined herein)_ who examined or treated you in the past ten (10) years, state:

a.  The name, address and specialty of each medical practitioner.

**INTERROGATORY NO. 17:**     List each injury, symptom or complaint mentioned in answer to Interrogatory No. 10 from which you suffered at any time before the incident.

**RESPONSE:**     **Juliet Youmaran had been treated for stress and anxiety pre-incident.**

**INTERROGATORY NO. 18:**     Do you claim to have lost any time from gainful employment as a result of the actions of any City of Phoenix police officers who are named as Defendants in this lawsuit? _____ If so, state:

   a. The specific condition upon which you claim caused the loss of time.

   b. The amount of time lost.

   c. The rate of pay or compensation regularly received from each such gainful employment.

   d. If you claim any damage as a result of the time lost, the total and your method of computation.

**RESPONSE:**     **David Khalaj, as a real estate agent and businessman, had no set hours *per se*. His business and employment, however, were greatly impacted from his unlawful arrest. The financial extent of this impact will be set forth in an expert disclosure.**

**INTERROGATORY NO. 19:**     List each job or position of employment including self-employment, held by you for the past ten (10) years, stating as to each, the following:

GAONA LAW FIRM
3101 North Central Avenue – Suite 720
Phoenix, Arizona 85012

a. Name and address of employment.

b. Date of commencement of and date of termination.

c. Place of employment.

d. Nature of employment and duties performed.

e. Name and address of immediate supervisor.

f. Rate of pay or compensation received.

g. Reason for separation from employment.

**RESPONSE**

**Real Estate Agent**

**3930 East Ray Road**

**Phoenix, Arizona 85044**

**REALTY EXECUTIVES**

**August 1996 - September 2015**

**PRO SPORTS REALTY**

**September 2015 - to present**

**Broker:  Sandy Young**

**Mr. Khalaj had formed Pro Sports Realty in 2007 and decided in 2015 to pursue his own venture on a full time basis.  His office has been located at all times at 3930 East Ray Road, Phoenix, Arizona 85044.**

Dated this _14th_ day of February, 2020.

7

GAONA LAW FIRM

David F. Gaona
3101 North Central Avenue, Suite 720
Phoenix, Arizona 85012
Attorneys for Plaintiffs
    David Khalaj and Juliet David Youmaran

Original of the foregoing mailed this
_14__ day of February, 2020, to:

Lori V. Berke, Esq.
Jody C. Corbett, Esq.
Berke Law Firm, PLLC.
1601 North 7th Street, Suite 360
Phoenix, Arizona 85006
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendant City of Phoenix


        /s/ Barbara J. Kuhns

8

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

David Khalaj and ) No. CV-17-01199-PHX-GMS (JZB)
Juliet David )
Youmaran, a married )
couple )
)
        Plaintiffs, )
)
vs. )
)
City of Phoenix, )
Arizona, a municipal )
corporation, Lillian )
Fine and John Doe )
Fine, husband and )
wife; Scott Melander )
and Jane Doe )
Melander, husband and )
wife; Sgt. Green and )
Jane Roe Green, )
husband and wife; )
Todd Blanc and Jane )
Roe Blanc, husband )
and wife; )
)
        Defendants. )
_____)

DEPOSITION OF JOHN FOLTZ

Phoenix, Arizona
August 6, 2020
9:36 a.m.

BARTELT|NIX REPORTING, LLC
RRF No. 1028
3101 N. Central Ave., Suite 290
Prepared by:                    Phoenix, Arizona  85012
JEFFREY W. BARTELT, CR, RPR    Phone:  (602) 254-4111
Certificate No. 50363           office@barteltreporting.com

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 34 of 104    Page: 2

Deposition of John Foltz
8/6/2020                                                    Khalaj and Youmaran vs. City of Phoenix

1                           I N D E X

2    WITNESS:

3    JOHN FOLTZ                                        PAGE

4
          Examination by Ms. Berke....................4
5
          Examination by Mr. Gaona....................188
6

7

8

9

10                         E X H I B I T S

11

12    NO.                DESCRIPTION                   PAGE

13    1     Subpoena To Produce Documents, Information
            Or Objects Or To Permit Inspection Of
14          Premises In A Civil Action.................7

15    2     Invoice....................................10

16    3     E-mail dated April 1, 2020.................18

17    4     Letter dated January 14, 2020..............28

18    5     Letter dated September 11, 2015............159

19    6     Earnings Detail Report.....................164

20

21

22

23

24

25

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 35 of 104    Page: 3
Deposition of John Foltz
8/6/2020                                            Khalaj and Youmaran vs. City of Phoenix

1            DEPOSITION OF JOHN FOLTZ

2     commenced at 9:36 a.m. on August 6, 2020, at the

3     offices of BARTELT|NIX REPORTING, LLC, 3101 North

4     Central Avenue, Suite 290, Phoenix, Arizona, before

5     JEFFREY W. BARTELT, a Certified Reporter, CR No.

6     50363, for the State of Arizona.

7

8                              *  *  *

9

10                    A P P E A R A N C E S

11

12         For the Plaintiffs:

13     GAONA LAW FIRM, PC
       By:   David F. Gaona, Esq.
14           3101 North Central Avenue, Suite 720
             Phoenix, Arizona 85012
15           david@gaonalaw.com

16         For the Defendants:

17     BERKE LAW FIRM, PLLC
       By:   Lori V. Berke, Esq.
18           1601 North 7th Street, Suite 360
             Phoenix, Arizona 85006
19           lori@berkelawfirm.com

20

21

22

23

24

25

1    Q.  And did you enter into any kind of written

2    agreement for your expert witness retention in this

3    case?

4    A.  I indicated that I was willing to do it, and

5    I believe he asked me, I'm uncertain, but I believe

6    he asked me over the phone what my fee was, and I

7    told him, and it was okay.

8    Q.  And so did you ever reduce your agreement to

9    serve as an expert to writing either in an e-mail, a

10   letter, text message, any kind of writing?

11   A.  I'm certain it was referred to tangentially

12   in various conversations, but, no, nothing that

13   was -- we didn't have a written agreement.

14   Q.  And there is no e-mail confirming your

15   hourly rate?

16   A.  I don't believe so.

17   Q.  And then it says that you met with Khalaj at

18   Tempe Marketplace on January 15th of 2020.  Is that

19   correct?

20   A.  Yes.

21   Q.  And you met with him for an hour?

22   A.  Yes.

23   Q.  And was anybody else present, or was it just

24   you and Mr. Khalaj?

25   A.  His assistant, Norman, was present.  I

```
 1   describe Norman as his assistant.  I think it might

 2   be a partner, but he was the analytic part of the

 3   team.

 4        Q.  All right.  And do you know Norman's last

 5   name?

 6        A.  Not off the top of my head, no.

 7        Q.  Was anybody else present?

 8        A.  Just the three of us, I believe.

 9        Q.  And what kind of information did Mr. Khalaj

10   provide you with verbally and Norman provide you

11   with verbally at that meeting?

12        A.  The meeting had to do with a discussion of

13   my need to be -- to independently verify information

14   that had been previously provided to me by

15   Mr. Khalaj's attorney and apparently either

16   Mr. Khalaj or Norman was the original source, and

17   that's the information you referred to a few moments

18   ago.

19        Q.  All right.  So if I'm understanding you

20   correctly, you met with Mr. Khalaj so that you could

21   verify the information contained in the productivity

22   stats that you received from Mr. Gaona that are

23   referred to as David year-to-date comparisons?

24        A.  No, that's not correct.

25        Q.  Okay.  So then I'm not understanding you.
```

Deposition of John Foltz
8/6/2020
Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 38 of 104    Page: 111
Khalaj and Youmaran vs. City of Phoenix

1  that were sent to you on the disc that we talked

2  about earlier; correct?

3      A.  That's correct.

4      Q.  And then same day, it says review Khalaj

5  personal buys and sells.  Impact, question mark.

6  Requesting player/non-player breakdown.  Correct?

7      A.  Correct.

8      Q.  And that was an hour of your time?

9      A.  Yes.

10      Q.  And so can you walk us through that time

11  entry and tell us what you were doing.

12      A.  Sure.  I wanted to eliminate any

13  transactions that were his personal transactions

14  because they clearly were not going to be impacted

15  by whatever our client did or didn't think, so we

16  wanted to eliminate his personal buys and sells, and

17  I wanted to break down the transaction performances

18  based on who -- which transactions were with players

19  and which transactions were with non-players.

20      Q.  And are we talking prior to his arrest,

21  after his arrest, or both?

22      A.  Both.

23      Q.  And then January 21st, 2020, it says meeting

24  at Khalaj office with client.  What does that

25  mean?

Deposition of John Foltz
8/6/2020

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 39 of 104    Page: 112
Khalaj and Youmaran vs. City of Phoenix

1      A.  It means Mr. Khalaj was there.

2      Q.  At his office?

3      A.  Yes.

4      Q.  And then it says new strategy review.  What

5  does that mean?

6      A.  It means I reviewed what we had already

7  discussed several times about the strategy for me to

8  develop information and coming to a place where I

9  could opine.

10      Q.  And so really what you did on the Khalaj

11  player/coach missed transactions spreadsheet was you

12  listed the completed transactions he had with

13  professional athletes and coaches for 2013, 2014 and

14  2015 and then you -- well; is that correct?

15      A.  Yes.

16      Q.  And then were those all purchases?

17      A.  Yes.  Those are properties purchased.

18      Q.  Okay.  And so then if that athlete later

19  sold the property, you considered that a lost sale

20  for Mr. Khalaj?

21      A.  I did.

22      Q.  Caused by his arrest?

23      A.  I was simply looking at the change in

24  business at the time.

25      Q.  But it's your opinion that he lost out on

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 40 of 104    Page: 187
Deposition of John Foltz
8/6/2020                                                    Khalaj and Youmaran vs. City of Phoenix

1      Q.   BY MS. BERKE:  Did you ask Mr. Khalaj

2   whether there was anything going on in his life

3   that -- other than the arrest that would distract

4   him from being able to perform his

5   responsibilities?

6      A.   I didn't ask him that specific question.  I

7   did know about his house burning down.

8      Q.   And do you know about any health issues he's

9   had?

10      A.   Vaguely that he -- I'm just not well enough

11   informed.  I believe he was -- might have been

12   prediabetic, but I'm uncertain about that.

13      Q.   Do you know if there was ever any period of

14   time where he was almost unable to work for a year

15   or so?

16      A.   I'm not aware of that, no.

17      Q.   But certainly if he was so ill that he could

18   hardly work, that could impact someone's business;

19   correct?

20           MR. GAONA:  Foundation.  Speculative.

21           THE WITNESS:  Yeah.  It's a series of

22   questions that you're asking about could it impact.

23   The answer is going to be yes, of course, it could.

24   I have no way to know that it did or didn't.

25      Q.   BY MS. BERKE:  And you did no analysis of

```
 1   anything going on in Mr. Khalaj's life at any point

 2   in time other than his arrest; correct?

 3        A.   I didn't analyze his arrest, either.  I only

 4   analyzed the business being done before the date of

 5   the incident and the business done after the date of

 6   the incident to see if there were any comparisons

 7   and to try to opine as to why that may have

 8   happened.

 9        MS. BERKE:  That's all I have.

10

11                     EXAMINATION

12   BY MR. GAONA:

13        Q.   Mr. Foltz, I have some questions for you.

14        You were asked a number of questions by

15   Ms. Berke with respect to your knowledge of folks,

16   whether they be sports agents, sports management

17   types, and I think she asked specifically about

18   whether you were aware of anyone from Cardinals

19   management having conversations with athletes

20   about -- or their athletes, I should say, about good

21   or bad behavior.  Do you recall those questions?

22        A.   Yes.

23        Q.   And I think you said, no, you hadn't had any

24   conversations with Cardinals folks, but you would

25   have expected them to offer the same advise as other
```

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 42 of 104    Page: 193
Deposition of John Foltz
8/6/2020                                                          Khalaj and Youmaran vs. City of Phoenix

 1              THE WITNESS:  I don't know.

 2         Q.  BY MR. GAONA:  Okay.

 3         A.  Most likely.  It's a small amount, but I do

 4    know that Mr. Fitzgerald not only bought properties

 5    to live in, but he bought properties as investments,

 6    so it could have easily been one of those.  And, in

 7    fact, $45,000 could easily have been a lease

 8    transaction.  Could have been an early on

 9    transaction.

10         Q.  When you had your conversation with

11    Mr. Khalaj as noted in your invoice, and let's go

12    back to Exhibit No. 2, sir, I think.

13         A.  Okay.

14         Q.  The visit described on January 21, 2020, the

15    first page of Exhibit No. 2, do you see that?

16         A.  Uh-huh.  Yes.

17         Q.  Why did you -- well, strike that.

18              This particular reference indicates that you

19    actually went to Mr. Khalaj's office to meet with

20    him?

21         A.  Yes.

22         Q.  Why did you choose to go to his office to

23    meet with him?

24         A.  I wanted to see for myself if his office was

25    the same as it had been when I knew him more

1   regularly, if that was still a part of his strategy

2   to have a gathering place, what kinds of things were

3   in the office that might attract or repel, you know,

4   players and other clients.  I wanted to get a

5   feeling for the physical surroundings in which he

6   was working, whether or not they were similar or the

7   same as what they had been when I knew him more.

8        Q.  And when you visited his office back on

9   January 21, 2020, what did you learn about the

10  office setup?

11       A.  It was the same.  It was a real similar

12  approach.  The things that were on the wall were

13  things that were motivational that relate to

14  players.  The thankfulness players and others, that

15  the strategy was clearly -- that part of the

16  strategy was clearly the same.

17       Q.  And if I understood answers to questions

18  correctly asked by Ms. Berke relative to that

19  meeting, your recollection was that there were two

20  or three other individuals present?

21       A.  Yes.

22       Q.  They were not athletes --

23       A.  Not athletes.

24       Q.  -- to the best of your knowledge?

25       A.  Well --

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 44 of 104    Page: 195
Deposition of John Foltz
8/6/2020                                                    Khalaj and Youmaran vs. City of Phoenix

 1          MS. BERKE:  Foundation.

 2          THE WITNESS:  It's a great question.  I'm

 3   uncertain -- one of them I know was not an athlete.

 4   I'm uncertain if the other one was an athlete or

 5   not.

 6      Q.  BY MR. GAONA:  In any event, you didn't

 7   speak to the other folks that were there?

 8      A.  No, I did not.

 9      Q.  And the conversation you had with Mr. Khalaj

10   that day, was that a personal conversation in an

11   office or was it a conversation that went on in the

12   presence of others who were present?

13      A.  It was in his conference room and I believe

14   it was the three of us, Norman, Mr. Khalaj and

15   myself.

16      Q.  Your reference here as it relates to that

17   day and meeting says impact emotional.  What does

18   that mean?

19      A.  The impact that I observed on him was he was

20   highly emotional up to and including tears and a

21   vacillation between sadness and anger.  It just was

22   a lot of motions all mixed up, and so I wasn't real

23   clear on what kind of rational information or ideas

24   I would get from him at that time.  It was easy to

25   observe and it was, I would say, very emotional.

# INVOICE. Re: Khalaj v. City of Phoenix
## January/ February, 2019

David Gaona
Gaona Law firm
3101 N. Central Avenue, Suite 720
Phoenix, AZ 85012

**John Foltz.**
**Real Estate Consultant**
9830 N. 79th Pl
Scottsdale, AZ 85258
(602) 882-0007.

johnfoltzaz@gmail.com

## Re: Khalaj v. City of Phoenix

| Date | Activity | Time (Hrs) |
|------|----------|-----------|
| 1/3/20 | Review Productivity stats from Gaona<br>Year to year Comparisons | 1.0 |
| 1/5/20 | Analyze productivity vs MLS stats re Khalaj<br>Productivity..Need breakdown | 1.6 |
| 1/15/20 | Mtg w/ Khalaj (Tempe Mktplc)<br>Change documentation Strategy? | 1.0 |
| 1/17/20 | Review New Annual #s from Norman<br>Year to year total productivity | 1.7 |
| 1/18/20 | Prepare Spreadsheet and Graph<br>w/ Norman Data …<br>Review w/ Khalaj..Need new strategy | 1.5 |
| 1/18/20 | Review docs sent on Disc from Attny<br>re: attny filings, etc | 3.6 |
| 1/18/20 | Review Khalaj personal buys and sells<br>Impact?  Requesting Player/Non-Player breakdown | 1.0 |
| 1/21/20 | Mtg @ Khalaj Office w/ Client.  New Strategy review<br>Impact emotional, motivation, Office tour | 2.1 |
| 1/22/20 | Phone interview of Denise White, Sports Agent | 0.4 |
| 1/22/20 | Review of White website info, background<br>Player motivation, on line articles & research | 1.7 |
| 1/22/20 | email update to attny… | 0.2 |



EXHIBIT NO. 2
FOLTZ
8-6-20

# INVOICE. Re: Khalaj v. City of Phoenix......page 2
## January/ February, 2019

| | | |
|---|---|---|
| 1/22/20 | Review Trulia, Zillow, Bus Jnl, Az Schools for market info median sales update | 0.8 |
| 1/23/20 | Review ARMLS Data..Transaction Confirmations Market Performance Data | 1.0 |
| 1/29/20 | Phone w/ attny | 0.2 |
| 2/4/20 | Phone w/ Norman, Khalaj re: breakdown of numbers Player bus..Non Player bus...Personal bus..w/ follow up notes after call for proceeding | 1.2 |
| 2/5/20 | Review data and sample calculations and comparisons w/ trial spreadsheet preparations of options for calculation strategies | 2.4 |
| 2/6/20 | Rough draft of Opinion w/out spreadsheets | 1.7 |
| 2/6/20 | Phone and follow up number crunching Restructure options and select | 5.2 |
| 2/7/20 | Edit, and organize data in spreadsheet format | 3.5 |
| 2/8/20 | Draft, calculate, edit, modify, recalculate, Write Opinion for presentation | 5.3 |
| 2/10/20 | Edit/additions/deletions/ final changes | 1.4 |
| 2/11/20 | Further edits | 1.0 |

Total Time This Invoice                                                               39.5

**Total Billable Hours:  38.5 @ $350...........................Amount Due:  $13,825**
**Professional Courtesy (10%)...............................................- 1,383**
**Net Amount Due................................................................  $12,442**

EXHIBIT 6

```
1          page 1

2                              UNITED STATES DISTRICT COURT

3                                 DISTRICT OF ARIZONA

4                    DAVID KHALAJ, JULIET YOUMARAN      )

5                    and OAKWOOD HILLS, LLC,            )

6                                                       )

7                        Plaintiffs,                    )No. 2:15-CV-01827-GMS

8                                                       )

9                    vs.                                )

10                                                      )

11                   STATE FARM FIRE AND CASUALTY       )

12                   COMPANY,                           )

13                                                      )

14                       Defendant.                     )

15                   _____)

16                      VIDEOTAPED DEPOSITION OF DAVID KHALAJ

17                              Phoenix, Arizona

18                              April 27, 2016

19                                      Prepared by:

20                                      Meri Coash, RMR, CRR

21                                      Certified Reporter

22                                      Certification No. 50327

23          page 2
```

```
1                    I N D E X

   WITNESS                             PAGE
2
    DAVID KHALAJ
3
        Examination By Mr. Bienstock          7
4

5

6

7
                 EXHIBITS MARKED
8
   EXHIBITS            DESCRIPTION          PAGE
9
   Exhibit 1     Authorization to Repair,       46
10               Khalaj 000002

11  Exhibit 2     Fire department report,        67
                 Khalaj-Moffett 003 - 4
12
   Exhibit 3     Floor plan, SF-KHA-CLM000722    68
13
   Exhibit 4     Authorization for Liaison,      91
14               Khalaj 000003 - 4

15  Exhibit 5     Letter from Loss Analytics to  96
                 David & Juliet Khalaj dated
16               September 9, 2013,
                 Khalaj 000027 - 30
17
   Exhibit 6     Letter from Neil Thomson to Ken 101
18               Peace with attachment, dated
                 January 22, 2014,
19               SF-KHA-CLM003203 - 3205

20  Exhibit 7     Email with attachment,         103
                 Khalaj 000212 - 215
21
   Exhibit 8     Restoration & Interiors' itemized 105
22               list, Khalaj-LAI 1179 - 1208

23  Exhibit 9     Email chain, SF-KHALAJ-CC000650 122

24  Exhibit 10    Email from Jeff Cullumber to David 123
                 Khalaj dated September 16, 2013,
25               SF-KHALAJ-CC000311
```

| | | | |
|---|---|---|---|
| 1 | Exhibit 11 | Supplement to contract, SF-KHALAJ-CC000380 - 382 | 124 |
| 2 | | | |
| | Exhibit 12 | Central Construction Co. Warranty and Certificate of Completion, SF-KHA-CLM002754 - 2755 | 130 |
| 3 | | | |
| 4 | | | |
| | Exhibit 13 | Central Construction Co. Actual Costs over State Farm Reconciliation, Khalaj 002172 - 2178 | 138 |
| 5 | | | |
| 6 | | | |
| 7 | Exhibit 14 | Letter from Michael Mehan to David Khalaj with attachment, dated April 17, 2014, Khalaj 001024 - 1027 | 142 |
| 8 | | | |
| 9 | | | |
| | Exhibit 15 | Letter from Kenneth Peace to Neil Thomson with attachments, dated November 5, 2013, SF-KHA-CLM002709 - 2719 | 147 |
| 10 | | | |
| 11 | | | |
| 12 | Exhibit 16 | Structural Damage Claim Policy, Khalaj 000991 - 001003 | 148 |
| 13 | | | |
| | Exhibit 17 | Letter from Elisabeth Martini to Neil Thomson with attachment, dated July 22, 2014, Khalaj 001507 - 1508 | 151 |
| 14 | | | |
| 15 | | | |
| 16 | Exhibit 18 | Letter from Neil Thomson to Mitch Resnick with attachment, dated February 17, 2015, SF-KHA-CLM002751 - 2887 | 152 |
| 17 | | | |
| 18 | | | |
| | Exhibit 19 | Letter from Michael Jordan to Misti VanEmst dated April 24, 2014, Khalaj 001045 | 183 |
| 19 | | | |
| 20 | | | |
| | Exhibit 20 | Transcript of recorded conversation between David Khalaj and Mr. and Mrs. Kentzel | 188 |
| 21 | | | |
| 22 | | | |
| | Exhibit 21 | Text messages, Khalaj 4477 - 4484 | 210 |
| 23 | | | |
| | Exhibit 22 | Certified Policy Record, SF-KHA-CLM003018 - 3054 | 218 |
| 24 | | | |
| 25 | Exhibit 23 | Renewal Certificate, Khalaj 001649 | 219 |

```
 1   Exhibit 24    Fax from Marci to State Farm,        235
                   SF-KHA-CLM002724 - 2725
 2
     Exhibit 25    Phoenix Police Department Incident   263
 3                 Report

 4   Exhibit 26    Investigation and Testing of         231
                   Evidence, SF-KHA-CLM001617 - 1665
 5

 6

 7

 8

 9                 PREVIOUSLY MARKED EXHIBITS

10              Youmaran Exhibit 4      Page 181

11

12                         REQUESTS

13              Page 125    Line 23

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              VIDEOTAPED DEPOSITION OF DAVID KHALAJ

 2    was taken on April 27, 2016, commencing at 9:48 a.m. at

 3    the law offices of Poli & Ball, PLC, 2999 North 44th

 4    Street, Suite 500, Phoenix, Arizona, before Meri Coash, a

 5    Certified Reporter in the State of Arizona.

 6

 7

 8                        *   *   *

 9    APPEARANCES:

10         For the Plaintiffs:
                MERLIN LAW GROUP
11              By:  William F. Merlin, Jr., Esq.
                     777 South Harbour Island Boulevard
12                   Suite 950
                     Tampa, Florida 33602
13                   813-229-1000
                     wmerlin@merlinlawgroup.com
14
           For the Defendant:
15              STEPTOE & JOHNSON, LLP
                By:  Floyd P. Bienstock, Esq.
16                   201 East Washington Street
                     Suite 1600
17                   Phoenix, Arizona 85004
                     602-257-5200
18                   fbienstock@steptoe.com

19         Also present:  Silas Kyler, videographer

20

21

22

23

24

25
```

```
 1        Q.   Okay.  How much did you earn in the years from

 2   2012 to 2015?  Just your best estimates.

 3        A.   Couple million dollars maybe.

 4        Q.   So if we can break it down by year, are you

 5   saying a couple million dollars each year?

 6        A.   Yes.  I honestly can't break it down.  I can't

 7   recall the 2013 -- from the beginning of 2013 to the day

 8   of the fire and after that.

 9        Q.   Okay.  So I'm not sure what you're saying.

10        A.   I don't remember how much was 2012.

11        Q.   Okay.

12        A.   Don't remember -- I remember what was 2013.  Was

13   approximately maybe 550,000 until August, and after

14   that -- but prior to that, I have few other transaction in

15   escrow, and from when the fire started until the end of

16   the year, hardly anything.

17        Q.   Okay.  And what about 2014?

18        A.   Maybe quarter million dollars.

19        Q.   2015?

20        A.   2015 improved, but we were rebuilding our

21   business back up because I was gone for about a year and a

22   half.  I have to say 3-, $400,000.

23        Q.   What do you -- what do you mean by you were gone

24   for about a year and a half?

25        A.   Well, you know, I was sick, bedridden, could not
```

```
 1    service the clients, and so that really affected the

 2    business.

 3        Q.   How much -- how much business have -- has Pro

 4    Sports -- what's the name of your entity again?  I'm

 5    sorry.

 6        A.   Pro Sports Realty.

 7        Q.   -- Pro Sports Realty done since it's been in

 8    existence?

 9        A.   Since 2007, I believe, I have to say a few

10    million dollars, 5, $6 million possibly.

11        Q.   And you're the sole owner of that?

12        A.   Correct.

13        Q.   Okay.  So I thought you said you started that in

14    2015.

15        A.   Correct.  But the Pro Sports Realty was formed in

16    2007, and I was -- my license was with -- as an

17    independent contractor with Realty Executive until 2015.

18    But we were also writing all the checks, everything out of

19    Pro Sports.  So we work -- we get the checks is issued to

20    us from -- from the title company to Realty Executive.

21    Realty Executives gets the check and cut us a check that

22    goes into Pro Sports Realty.

23        Q.   Okay.  So since 2007, Pro Sports Realty -- your

24    company -- has made about five or six million?

25        A.   Yes.
```

```
 1   because according to those guys, the conflict -- stories,

 2   I mean, whether it was smoke or whether it was misting,

 3   why would they need to mist the room if there was no smoke

 4   in that room?

 5       Q.   Sir -- sir --

 6       A.   Because I recall clearly when they were misting,

 7   they opened every one of my closet doors.  Every single

 8   one of them.

 9       Q.   And the misting was done by Steamatic --

10       A.   Yes, sir.

11       Q.   -- in the first week --

12       A.   Yes, sir.

13       Q.   -- as part of the cleanup of -- that they were

14   doing at your home?

15       A.   Yes, sir.

16       Q.   Okay.  So when you got better from being

17   bedridden in June, when was that?

18       A.   Sometimes -- when I got home on November 24th of

19   2014.  That's when I start feeling better.

20       Q.   No, no, no.  That's not what I'm asking.

21       A.   Please.

22       Q.   You're -- you're saying that you couldn't read

23   Exhibit 22 --

24       A.   Yes.

25       Q.   -- the report from Veritox on, among other
```

```
 1   things --

 2      A.   Yes, sir.

 3      Q.   -- the clothes in the master bedroom because you

 4   were home bedridden?

 5      A.   Yes.

 6      Q.   And I'm asking how long did that last?   When

 7   did -- were you no longer bedridden so that you could read

 8   something that related to your claim?

 9      A.   I'm just trying to tell you.   It's around the

10   time when I start moving in my house.   When there was a

11   pack-out and a construction, I was there trying to help

12   every which way I can.   There are pictures of me sleeping

13   on the floor just to watch the people packing things.

14   Sleeping on a raw floor, sick, because I couldn't keep my

15   eyes open, so --

16      Q.   Are you saying you were bedridden from June 1st

17   of 2014 through the day before Thanksgiving?

18      A.   No.  No.  I -- actually, prior in May -- in May I

19   was present at the house for the pack-out, but I was

20   laying on the floor because there was nobody else.   But,

21   yes, I was in many months I couldn't go to work, I

22   couldn't do anything until I start moving in my house is

23   when my full recovery came to me.

24      Q.   That's not my question, sir.

25      A.   Yes, sir.
```

# EXHIBIT 7

# Background Information for David Khalaj

Your information was received on April 14, 2020 at 6:52:52 PM.

---

Background Information: Identification

## Applicant Identification

Name: **David Khalaj**

Social Security Number: ████████

Date of Birth: ████████

Gender: **Male**

Blind or low vision: **No**

Disabled: **Yes**

Start Date of Disability: **July 17, 2018**

Denied Benefits in Last 60 days: **No**

Diagnosed with condition that is expected to end in death: **No**

## Preparer's Contact Information

Name: **Attny Jeffrey L Milam**

Relationship to Applicant: **Attorney Representative**

Organization Name: **Milam Law Inc**

Address: **2325 El Camino Ave, Sacramento, California, 95821**

Phone: **(916) 486-4245**

## Applicant's Contact Information

**Contact Information**

Mailing Address: ████████

Reside at this address: **Yes**

Phone: ████████

Best time to call: **Anytime between 9 a.m. and 5 p.m.**

**Ability to Communicate in English**

Speak English: **Yes**
Read English: **Yes**
Write English: **Yes**

**Language Preferences**
Preferred language for speaking: **English**
Preferred language for reading: **English**

## Birth and Citizenship Information

Place of Birth: **Tehran, Iran**
U.S. Citizen: **Yes**
Type of Citizenship: **Naturalized citizen**
Date of Citizenship: **March 21, 2008**

## Other Social Security Numbers and Names

**Other Social Security Numbers**
Any other Social Security Numbers used: **No**

**Other Names**
Any other names used: **No**

Background Information: General

## Marriage Information

Currently married: **Yes**
Spouse's Name: **Juliet Youmaran**
Spouse's Social Security Number: █████████
Know Spouse's date of birth: **Yes**
Spouse's date of birth: █████████
Date of Marriage: █████████
Place of Marriage: **Chicago, Illinois**
Marriage Type: **Married by Clergy or Public Official**

## Prior Marriages

Any prior marriages: **No**

# Children

Have any children: **Yes**

Any children who became disabled prior to age 22: **No**

Any unmarried children under age 18: **Yes**

Any unmarried children aged 18 to 19 still attending elementary or secondary school (below college level) full time: **Yes**

Child 1: ███████ **Khalaj**

Child 2: ███████ **Khalaj**

More than 10 children: **No**

# Employer Details

Worked for an employer in 2019: **No**

Worked or will work for an employer in 2020: **No**

# Self-Employment Details

Self-employed in 2019: **No**

Self-employed in 2020: **No**

# Supplemental Information

Worked outside the US: **No**

Spouse worked outside the US: **No**

Agree with earnings history as shown on Social Security statement: **Not sure or David Khalaj does not have a statement**

# Total Earnings

Neither working for an employer nor self-employed in 2019 or later, last year worked:  **2018**

# Other Pensions/Annuities

Ever work in a job where U.S. Social Security taxes were not deducted or withheld: **No**

Spouse worked for the Railroad 5 years or more: **No**

## Direct Deposit Details

Own or co-own a bank account to use for Direct Deposit: **Yes**

Account Type: **Checking**

Routing Number: ▮▮▮▮▮▮▮

Account Number ▮▮▮▮▮▮▮▮▮▮▮

Background Information: Other Benefits

## Benefit Information

Intend to apply for Supplemental Security Income benefits: **No**

Any previous application(s) for Medicare, Social Security, or Supplemental Security Income benefits: **No**

## Ability To Work

Illnesses, injuries, conditions related to work: **No**

Now able to work: **No**

## Disability Payments

Filed or intend to file for workers' compensation or other public disability benefits: **No**

Received money from employer on/after date unable to work: **No**

Expect to receive money from employer in the future: **No**

## Dependents

Has one parent who receives one-half support: **No**

Background Information: Remarks & Options

## Remarks

The following are your remarks: **I am totally disabled and can no longer work. Attorneys Jeffrey Milam and Sengthiene Bosavanh with Milam Law Inc. assist me with my Social Security Disability Insurance Benefits case. Please contact them with any questions about my claim. Milam Law Inc. 2325 El Camino Ave. Sacramento, CA 95821 (916) 486-4245 office (916) 480-1205 fax**

# Disability Information for David Khalaj

Your information was received on April 14, 2020 at 8:04:34 PM.

### Identification

## Applicant Information

### Identification Information

Name: **David Khalaj**

Social Security Number:

Date of Birth:

Gender: **Male**

### Contact Information

Mailing Address

Daytime Phone Number:

Alternate Phone Number:

### Ability to Communicate in English

Speak English: **Yes**

Read English: **Yes**

Write English: **Yes**

### Other Names

Other Names Used on Medical or Educational Records: **No**

## Preparer's Contact Information

Name: **Attny Jeffrey L Milam**

Relationship to Applicant: **Attorney Representative**

Organization Name: **Milam Law Inc**

Address: **2325 El Camino Ave, Sacramento, California, 95821**

Phone: **(916) 486-4245**

## Re-entry Number

The Re-entry Number is: **51729555**
(The Re-entry Number cannot be edited.)

### Medical

# Conditions

**List of physical and mental conditions:**

1: **PTSD and depression**

2: **Bilateral knees pain**

3: **Diabetes Mellitus - Type I**

4: **Right hand numbness and tingling - neuropathy**

5: **Right foot numbness and tingling - neuropathy**

6: **Right side of face numbness and tingling - stroke**

7: **Stroke residuals**

8: **Bilateral wrists**

9: **Right shoulder pain**

10: **Neck pain**

Height without shoes: **6 feet  1 inch**

Weight without shoes: **210 lbs**

Conditions cause pain or other symptoms: **Yes**

**Seen a healthcare provider or received treatment, or have an appointment scheduled:**

For physical conditions: **Yes**

For mental conditions: **Yes**

# Other Contact

Name: **Jeffrey Milam**

Relationship to Applicant: **Attorney Representative**

Address: **2325 El Camino Ave, Sacramento, California, 96821**

Phone Number: **(916) 486-4245**

Speak English: **Yes**

# Doctor/Healthcare Professional 1

**Doctor/Healthcare Professional Details**

Name: **Dr. Megan Jhaver**

Office Name: **Infinity Internal Medicine**

Address: **1110 S Dobson Road, Chandler, Arizona, 85286**

Phone Number: **(480) 855-3229**

Patient ID Number:

**Treatment**
First Visit: **01/15/2019**
Last Visit: **04/10/2020**
Next Scheduled Appointment:
Medical Conditions Treated: **General complaints**
Treatment Received: **Exams Evals Check ups**

## Doctor/Healthcare Professional 2

**Doctor/Healthcare Professional Details**
Name: **Dr. James Leiver**
Office Name:
Address: **595 N Dobson Rd, Chandler, Arizona, 85224**
Phone Number: **(480) 821-0788**
Patient ID Number:

**Treatment**
First Visit: **6/1/2018**
Last Visit: **10/1/2018**
Next Scheduled Appointment:
Medical Conditions Treated: **General complaints**
Treatment Received: **Exams Regular evals Check ups**

## Doctor/Healthcare Professional 3

**Doctor/Healthcare Professional Details**
Name:  **Devendra Wadwekar**
Office Name: **East Valley Diabetes**
Address: **4100 S Lindsey Road Suite 130, Gilbert, Arizona, 85297**
Phone Number: **(480) 782-9531**
Patient ID Number:

**Treatment**
First Visit: **1/5/2020**
Last Visit: **4/10/2020**
Next Scheduled Appointment:
Medical Conditions Treated: **Diabetes**
Treatment Received: **Exams Regular evals Check ups**

## Doctor/Healthcare Professional 4

**Doctor/Healthcare Professional Details**
Name: **Dr. Austin Reed**
Office Name: **DHMG - BEHAVIORAL HEALTH - St Joseph Hospital**
Address: **500 W Thomas Rd Suite 230, Phoenix, Arizona, 85013**
Phone Number: **(602) 406-9999**
Patient ID Number:

**Treatment**
First Visit: **01/2020**
Last Visit: **4/10/2020**
Next Scheduled Appointment: **4/27/2020**
Medical Conditions Treated: **Mental health conditions**
Treatment Received: **Exams Regular evals Check ups Counseling**

## Doctor/Healthcare Professional 5

**Doctor/Healthcare Professional Details**
Name: **Dr. Dana Seltzer**
Office Name: **Orthopedic Surgeon**
Address: **7797 W Paradise Lane Unit 130, Teoria, Arizona, 85382**
Phone Number: **(623) 547-7502**
Patient ID Number:

**Treatment**
First Visit: **1/2016**
Last Visit: **12/23/2019**
Next Scheduled Appointment:
Medical Conditions Treated: **Both wrist injections - pain Shoulder pain injections Neck pain injections**
Treatment Received: **exams evals check ups**

## Medicine 1

Medicine: **Rosuvastatin**
Reason: **High cholesterol**
Prescribed by: **Dr. Megan Jhaver**

## Medicine 2

Medicine: **Metformin 1000 mg 2x daily**
Reason: **Diabetes**
Prescribed by: **Dr. Megan Jhaver**

## Medicine 3

Medicine: **Titalotram**
Reason: **Depression**
Prescribed by: **Dr. Megan Jhaver**

## Medicine 4

Medicine: **Ozempiz**
Reason: **Diabetes**
Prescribed by: **Devendra Wadwekar**

## Medicine 5

Medicine: **Basaglar**
Reason: **Daily Injections - Diabetes**
Prescribed by: **Devendra Wadwekar**

## Medicine 6

Medicine: **Alpprazolam**
Reason: **Depression PTSD**
Prescribed by: **Dr. Austin Reed**

## Medicine 7

Medicine: **Tramodol**
Reason: **Anxiety PTSD**
Prescribed by: **Dr. Austin Reed**

Work/Education

## Work Status

Currently Working: **No, he has stopped working**

## Work Activity

Date Stopped Working: **July 17, 2018**
Reason for Stopping: **Because of his condition**
Changes in Work Activity: **No**

## Job History

Earnings greater than $1180 since July 17, 2018: **No**
Number of jobs in the past 15 years: **1**

**Most Recent Job**
Job Title: **Realtor**
Type of Business: **Real Estate**
Start Date: **January 1996**
End Date: **July 2018**
Hours per Day: **8**
Days per Week: **5**
Pay Amount: **$15000**
Pay Frequency: **Monthly**

**Job Details**
Job Description: **I showed homes and sold homes; conducted open houses; got property ready to be shown and sold; managed contracts; drove clients to look at homes; negotiated contracts.**
Used Equipment: **No**
Used Technical Knowledge: **No**
Completed Reports: **Yes**
Walking: **4 hours (Part of the day)**
Standing: **1.5 hours**
Sitting: **1.5 hours**
Climbing: **0.5 hours**
Stooping: **2 hours (Not very often)**
Kneeling: **0 hours (Never)**
Crouching: **0 hours (Never)**

Crawling: **0 hours (Never)**

Handling Large Objects: **1 hour**

Writing, Typing or Handling Small Objects: **2 hours (Not very often)**

Reaching: **2 hours (Not very often)**

Description of Lifting and Carrying: **50- 100 lbs boxes and furniture, file cabinets, computers, tables, etc.**

Weight of Frequently Lifted Items: **10 lbs**

Maximum Weight Lifted: **100 lbs or more**

Supervised Others: **No**

Lead Worker: **No**

## Education

**Education and Training**

Highest grade completed: **12th Grade**

Date completed: **1977**

Special training, trade or vocational school: **Yes**

Type of program: **Real estate license classes**

Date program completed:

**Special Education**

Attended special education: **No**

Remarks

## Remarks

Additional information: **I am totally disabled and can no longer work. Attorneys Jeffrey Milam and Sengthiene Bosavanh with Milam Law inc. assist me with my Social Security Disability Insurance Benefits case. Please contact them for more information. Milam Law Inc. 2325 El Camino Ave. Sacramento, CA 95821 (916) 486-4245 I also take Aspirin as a blood thinner as well as use Ventilin- inhaler for my asthma.**

# Medical Release Form for David Khalaj

Your information was received on April 14, 2020 at 8:04:34 PM.

# Social Security
The Official Website of the U.S. Social Security Administration

## Apply for Benefits

1. Provide Background Information
2. Provide Disability Information
3. Sign Medical Release
4. Confirmation

---

**Thank you for applying for disability online.**

We will contact you with any updates or questions we may have about David Khalaj's information.

**What you need to do next:**
1. **Gather** the following documents:
   - Any medical evidence David Khalaj already has about his disability;
   - Award letters, pay stubs, settlement agreements or other proof of temporary or permanent workers' compensation type benefits David Khalaj received.
2. **Print** medical release form **for David Khalaj's signature;**
3. **Print** David Khalaj's personalized cover sheet;
4. **Mail** all of these items to:
   SOCIAL SECURITY
   702 W JEROME AVENUE
   MESA , AZ 85210-5992

If David Khalaj prefers to bring his documents in person, he can visit **his local Social Security office.**

If David Khalaj does not have all the documents listed above we will help him get any documents he needs.

**Caution: Do not mail foreign records or any Department of Homeland Security (DHS) documents** to us - especially those he is required to keep with him at all times. These documents are sensitive and expensive to replace if lost; and some cannot be replaced. Instead, **bring them to his local Social Security office** where they will be examined and returned to him.

View and Print David Khalaj's Receipt
We recommend that you keep a copy for your records.

---

## We May Need Additional Documents

Please gather the following document(s) and keep them in a convenient place so you will have them ready when you are contacted by a Social Security representative:

- Proof of David Khalaj's marriage, if we determine that David Khalaj qualifies for benefits as a spouse. We will contact him if we need this document.

Confirmation, Step 5 of 5: Apply for Benefits, Social Security    Document 219-1    Filed 12/31/20    Page 70 of 104    4/15/20, 8:50 AM

Case 2:17-cv-01199-GMS

| Useful Links | Contact Us |
| --- | --- |

- Reporting Responsibilities: What Needs to be Reported
- Frequently Asked Questions - Internet Benefit Claim
- Social Security Online: What You Can Do Online
- Voluntary Tax Withholding
- Helpful Health Information Online
- Prescription Assistance

Done

# NEW CLIENT
# INFORMATION SHEET

DATE:_____

NAME:_____

PRIMARY ADDRESS:_____

_____

PRIMARY PHONE NUMBER:_____

SOCIAL SECURITY NUMBER:_____

CURRENT AGE:_____

DATE OF BIRTH:_____

PRIMARY LANGUAGE:_____

INTERPRETER NAME:_____
    PHONE:_____

PLACE OF BIRTH:_____

MOTHERS MAIDEN NAME:_____

HOW DID YOU HEAR ABOUT OUR OFFICE?_____

FRIEND/RELATIVE'S PHONE NUMBER:_____

FRIEND/RELATIVE'S NAME:_____

FRIEND/RELATIVE'S ADDRESS:_____

_____

FATHERS NAME:_____

SIGNATURE:_____

*I agree that Milam Law can contact any named party on this form if staff cannot reach me. Also, it is okay if Milam Law communicates basic information, relative to my case, to the parties listed above.

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


David Khalaj and          )No. CV-17-01199-PHX-GMS (JZB)
Juliet David              )
Youmaran, a married       )
couple                    )
                          )
        Plaintiffs,       )
                          )
vs.                       )
                          )
City of Phoenix,          )
Arizona, a municipal      )
corporation, Lillian      )
Fine and John Doe         )
Fine, husband and         )
wife; Scott Melander      )
and Jane Doe              )
Melander, husband and     )
wife; Sgt. Green and      )
Jane Roe Green,           )
husband and wife;         )
Todd Blanc and Jane       )
Roe Blanc, husband        )
and wife;                 )
                          )
        Defendants.       )
_____  )


VOLUME I

VIDEOTAPED DEPOSITION OF JULIET DAVID YOUMARAN

Phoenix, Arizona
November 17, 2020
10:16 a.m.



                          BARTELT|NIX REPORTING, LLC
                 RRF No. 1028
                          3101 N. Central Ave., Suite 290
Prepared by:              Phoenix, Arizona  85012
JEFFREY W. BARTELT, CR, RPR  Phone:  (602) 254-4111
Certificate No. 50363     office@barteltreporting.com

Case 2:17-cv-01199-GMS   Document 219-1   Filed 12/31/20   Page 74 of 104   Page: 2
Deposition of Juliet David Youmaran
11/17/2020                                                     Khalaj and Youmaran vs. City of Phoenix

```
 1                      I N D E X

 2   WITNESS:

 3   JULIET DAVID YOUMARAN                          PAGE

 4        Examination by Ms. Berke...................6

 5

 6

 7

 8                    E X H I B I T S

 9
     NO.               DESCRIPTION                   PAGE
10
     1   Plaintiff Juliet David Youmaran's Responses
11       To Defendant's First Set Of Interrogatories.10

12   2   Plaintiffs David Khalaj And Juliet
         Youmaran's Responses To Defendant Scott
13       Melander's Interrogatories..................11

14   3   Plaintiffs David Khalaj And Juliet
         Youmaran's Responses To Defendant City Of
15       Phoenix Interrogatories.....................11

16   4   Plaintiff Juliet Youmaran's Responses To
         Defendant City Of Phoenix's Request For
17       Admissions..................................11

18   5   Plaintiff Juliet Youmaran's Responses To
         Defendant Lillian (Fine) Melander's Second
19       Set Of Interrogatories......................11

20   6   Plaintiffs Responses To Defendant Scott
         Melander's Second Set Of Interrogatories....12
21
     7   Plaintiffs David Khalaj And Juliet
22       Youmaran's Responses To Defendant Lillian
         (Fine) Melander's Second Set Of Request For
23       Production Of Documents.....................27

24   8   Complaint...................................50

25   9   Claim Form..................................52
```

1                              E X H I B I T S

2                                (Continued)

3
    NO.                   DESCRIPTION                        PAGE
4
    10    Complaint...................................54
5
    11    Plaintiffs David Khalaj And Juliet
6          Youmaran's Responses To Defendant Lillian
           (Fine) Melander's Interrogatories...........57
7
    12    COP-KHALAJ2548..............................67
8
    13    COP-KHALAJ2535..............................70
9
    14    COP-KHALAJ2332 - 2334.......................74
10
    15    COP-KHALAJ2307 - 2310.......................76
11
    16    COP-KHALAJ2295 - 2298.......................79
12
    17    Khalaj-Dr. Gomez 035, 032, 028, 027.........80
13
    18    COP-KHALAJ1167..............................86
14
    19    COP-KHALAJ0048 - 0049......................158
15
    20    Social Security Notice.....................165
16
    21    Social Security Notice.....................165
17
    22    Social Security Notice.....................165
18
    23    Social Security Notice.....................165
19
    24    Social Security Notice.....................165
20

21

22

23

24

25

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 76 of 104    Page: 4
Deposition of Juliet David Youmaran
11/17/2020                                                        Khalaj and Youmaran vs. City of Phoenix

```
 1              DEPOSITION OF JULIET DAVID YOUMARAN

 2    commenced at 10:16 a.m. on November 17, 2020, at the

 3    offices of BARTELT|NIX REPORTING, LLC, 3101 North

 4    Central Avenue, Suite 290, Phoenix, Arizona, before

 5    JEFFREY W. BARTELT, a Certified Reporter, CR No.

 6    50363, for the State of Arizona.

 7

 8                                * * *

 9

10                        A P P E A R A N C E S

11

12         For the Plaintiffs:

13         THE LAW OFFICES OF MARC S. NURIK
           By:   Marc S. Nurik, Esq.
           By:   Dana Zokaeim, Esq.
14               9350 Wilshire Boulevard, Suite 308
                 Beverly Hills, California 90212
15               marc@nuriklaw.com

16

17         For the Defendants:

18         BERKE LAW FIRM, PLLC
           By:   Lori V. Berke, Esq.
19               1601 North 7th Street, Suite 360
                 Phoenix, Arizona 85006
20               lori@berkelawfirm.com

21         Also present:

22               Tony Gonzales, videographer

23

24

25
```

 1           MR. NURIK:  It's competency and legal

 2    conclusion.  Look it up.

 3           MS. BERKE:  Go ahead and answer.  You can go

 4    ahead and answer.

 5           THE WITNESS:  There is legal -- things that

 6    happen to me because of the Phoenix PD.

 7        Q.  BY MS. BERKE:  What physical injuries

 8    occurred to you as a result of anything the Phoenix

 9    Police Department did?

10        A.  The Phoenix PD -- the Phoenix officers

11    wrongly charged us.

12        Q.  Okay.  Did that cause a physical injury to

13    you?

14        A.  It's mental injuries.

15        Q.  Okay.  We will talk about --

16        A.  Stress injuries.

17        Q.  We will talk about that issue.  I'm talking

18    about physical.

19           THE WITNESS:  You know what, I'm really

20    tired.  I can't even answer her, to be honest.  I

21    can't.  I am confused of what she's asking.  I am

22    confused how to answer because --

23           MR. NURIK:  Can you go on at this point?

24           THE WITNESS:  I don't think so.  I can't

25    even process anything right now.

Deposition of Juliet David Youmaran
11/17/2020

Case 2:17-cv-01199-GMS    Document 219-1    Filed 12/31/20    Page 78 of 104    Page: 176
Khalaj and Youmaran vs. City of Phoenix

 1          MR. NURIK:  Let me talk to her a second.

 2      Q.  BY MS. BERKE:  Well, I want an answer to

 3  that question before we break.

 4      A.  I can't answer you right now.  I really

 5  can't.  Right now, I want to answer, but I am -- I

 6  am lost at this point.  I am very tired, and when I

 7  get to that point, I can't focus anymore.

 8      Q.  You're unable to answer the question as to

 9  whether any City of Phoenix police officer caused

10  physical injury to you?

11          MR. NURIK:  I thought you asked that

12  question earlier.

13          MS. BERKE:  What was my last question?

14          (Question read back.)

15      Q.  BY MS. BERKE:  You can't answer the question

16  what physical injuries occurred to you as a result

17  of anything the Phoenix Police Department or Phoenix

18  officers did?

19      A.  I have emotional and -- I can't even find my

20  words.  That's what I'm trying to say.

21          MR. NURIK:  I say we call it right now.  She

22  can't answer the question.

23          THE WITNESS:  I can't -- I can't -- I can't

24  bring the word -- I can't think of the word to

25  ask.

```
 1        Q.  BY MS. BERKE:  You understand I said we are
 2   not talking about emotional injuries right now.  I'm
 3   talking about physical injuries.
 4        A.  I'm going to say this.  I have a problem
 5   when I become tired, exhausted.  I won't -- and I
 6   was telling this to David Gaona.  My words don't
 7   come out, so I am supposed to go back to therapy,
 8   which I have not because I am having issues.  When I
 9   get tired, I won't be able to function, so I cannot
10   even find the word that I want to say.
11        Q.  So you're not able to answer the question as
12   to what physical injuries --
13           MR. NURIK:  She's not able to answer any
14   questions right now.  That's what she's telling you
15   right now.
16           THE WITNESS:  I can't.
17           MR. NURIK:  And she's telling you she can't
18   go on with this deposition, so what I'm saying is
19   you have an absolute right to continue this
20   deposition at another time.  We will look at the
21   amount of time you've spent.  You've got up to seven
22   hours.  You've got the right to do it.  Fine.  We've
23   got a month left to take depositions.
24           MS. BERKE:  We are finishing this deposition
25   tomorrow.
```

```
 1              MR. NURIK:  Her deposition?

 2              MS. BERKE:  Yeah.

 3              MR. NURIK:  What about his deposition?

 4              MS. BERKE:  It's going to have to be

 5    rescheduled.

 6              MR. NURIK:  All right.  If that's what we

 7    have got to do, we have got to do.  All right.

 8    That's fine.

 9              THE WITNESS:  I'm sorry.

10              MR. NURIK:  Let's end it right now.  You're

11    finishing tomorrow.

12              How much time have we taken all total?

13              THE VIDEOGRAPHER:  We are at four hours and

14    one minute.

15              MR. NURIK:  Okay.

16              MS. BERKE:  So we have three hours left.

17              THE VIDEOGRAPHER:  We are off the record.

18    The time is 4:28 p.m.

19                  (WHEREUPON, the deposition was

20                   concluded at 4:28 p.m.)

21

22                      _____

23                      JULIET DAVID YOUMARAN

24

25
```

EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

David Khalaj and )No. CV-17-01199-PHX-GMS (JZB)
Juliet David )
Youmaran, a married )
couple )
)
        Plaintiffs, )
)
vs. )
)
City of Phoenix, )
Arizona, a municipal )
corporation, Lillian )
Fine and John Doe )
Fine, husband and )
wife; Scott Melander )
and Jane Doe )
Melander, husband and )
wife; Sgt. Green and )
Jane Roe Green, )
husband and wife; )
Todd Blanc and Jane )
Roe Blanc, husband )
and wife; )
)
        Defendants. )
_____)


VOLUME II

VIDEOTAPED DEPOSITION OF JULIET DAVID YOUMARAN

Phoenix, Arizona
November 18, 2020
10:54 a.m.



                          BARTELT|NIX REPORTING, LLC
                     RRF No. 1028
                          3101 N. Central Ave., Suite 290
Prepared by:              Phoenix, Arizona  85012
JEFFREY W. BARTELT, CR, RPR  Phone:  (602) 254-4111
Certificate No. 50363     office@barteltreporting.com

```
 1                    I N D E X

 2   WITNESS:

 3   JULIET DAVID YOUMARAN                          PAGE

 4
          Examination by Ms. Berke....................184
 5

 6

 7

 8                    E X H I B I T S

 9
     NO.                  DESCRIPTION              PAGE
10
     25   Video of Customs area.......................186
11
     26   Video of Holding cells......................186
12
     27   COP-KHALAJ0663 - 0664.......................193
13
     28   April 26, 2016 deposition of Juliet
14        Youmaran...................................244

15   29   COP-KHALAJ5494 - 5797.......................252

16   30   KHALAJ 00109 - 01426........................252

17   31   COP-KHALAJ5276 - 5279.......................252

18   32   COP-KHALAJ5867..............................252

19   33   COP-KHALAJ5864 - 5865.......................252

20   34   COP-KHALAJ5859 - 5863.......................252

21

22

23

24

25
```

```
 1              DEPOSITION OF JULIET DAVID YOUMARAN

 2   commenced at 10:54 a.m. on November 18, 2020, at the

 3   offices of BARTELT|NIX REPORTING, LLC, 3101 North

 4   Central Avenue, Suite 290, Phoenix, Arizona, before

 5   JEFFREY W. BARTELT, a Certified Reporter, CR No.

 6   50363, for the State of Arizona.

 7

 8                              *  *  *

 9

10                  A P P E A R A N C E S

11

         For the Plaintiffs:
12
     THE LAW OFFICES OF MARC S. NURIK
13   By:   Marc S. Nurik, Esq.
     By:   Dana Zokaeim, Esq.
14         9350 Wilshire Boulevard, Suite 308
           Beverly Hills, California 90212
15         marc@nuriklaw.com

16
         For the Defendants:
17
     BERKE LAW FIRM, PLLC
18   By:   Lori V. Berke, Esq.
           1601 North 7th Street, Suite 360
19         Phoenix, Arizona 85006
           lori@berkelawfirm.com
20

21       Also present:

22             David Khalaj
               Tony Gonzales, videographer
23

24

25
```

1      Q.  And do they hug and kiss you?

2      A.  Yes.

3      Q.  And do you give your husband the same kind

4  of hugs you give your children?

5      A.  Yes, I do.

6      Q.  But you don't kiss him?

7      A.  I kiss him, but not intimately, if that's

8  what you're asking, no.

9      Q.  And you attribute it to the events of

10 January 1st of 2016?

11     A.  Yes.

12     Q.  Okay.  Take a look at Exhibit Nos. 22

13 through 26.  And you read those when we were taking

14 a break; correct?

15     A.  On the Social Security?

16     Q.  Yes.

17     A.  I have not read them.  I have not seen them,

18 so, no, I don't know anything about them.

19     Q.  That was the reason we took the break.

20         MR. NURIK:  She can't read them.

21         THE WITNESS:  I can't even read right now.

22     Q.  BY MS. BERKE:  What do you mean you can't

23 read?

24     A.  I can't -- I can't focus.

25     Q.  Well, I need to ask you questions about the

 1   documents, and when we broke you said you were going

 2   to go read them.

 3          MR. NURIK:  And she tried.

 4          THE WITNESS:  I tried.  I really tried.

 5      Q.  BY MS. BERKE:  So do we need to finish your

 6   deposition on another day?

 7          MR. NURIK:  No, because you can ask a --

 8   first of all, the documents speak for themselves.

 9   You can read portions --

10          MS. BERKE:  No.

11          MR. NURIK:  -- of the documents and you can

12   ask her if she knows anything about them.  She's

13   already said she's never seen them before.

14          MS. BERKE:  These are her Social Security

15   documents.

16          MR. NURIK:  No.  They relate to her.  They

17   are not her documents.  They relate to her case.

18          MS. BERKE:  They were sent to her.

19          MR. NURIK:  They relate to her case.  Well,

20   why don't you ask her whether she's ever seen them.

21          MS. BERKE:  I'm going to ask that she read

22   the documents.

23          MR. NURIK:  Well, then let's -- why don't

24   you read them right now to her because she can't

25   read them.

 1          Q.   BY MS. BERKE:  You're unable to read?

 2          A.   That's part of my PTSD, yes.  I cannot read

 3   them when I am stressed, really stressed, stressed.

 4          Q.   Okay.

 5          A.   I cannot.  Even if I read, it will not make

 6   sense for me.

 7          Q.   OKay.  So you're just simply unable to read

 8   documents at the present time?

 9          A.   Exactly.  Exactly.  And that's what it is.

10   I can't change the way it is.

11          Q.   All right.  So how am I going to ask you

12   documents -- ask you questions about things that are

13   stated on the document if you can't read?

14          A.   If you can read it for me.  If you be kind

15   enough to read it for me.

16          Q.   But I need you to agree that things are

17   stated on there --

18          A.   Then I will agree with you if I know what it

19   is.

20          MS. BERKE:  I'm going to continue her

21   deposition and come back another date that she can

22   read, so that's what we are going to do.  I will

23   reserve the rest of my time for that.  We can do it

24   when we are back for his deposition.

25          VIDEOGRAPHER:  We are off the record.  The

# EXHIBIT 10

## Jody Corbett

| | |
|---|---|
| **From:** | Lori Berke |
| **Sent:** | Sunday, December 20, 2020 8:53 PM |
| **To:** | Marc Nurik |
| **Cc:** | Jody Corbett; Laine Roberts |
| **Subject:** | RE: Khalaj Depositions |

Marc, you did not mention the status of Jeffrey Milam's deposition.  Have you spoken with him about dates for his deposition?  If we do not receive a date by tomorrow, we will go to the time and expense of having a Subpoena issued and served on him.  We would obviously prefer not to have to do that.  Perhaps since Mr. Khalaj is not going to appear for his deposition on Tuesday and Wednesday, we can take Mr. Milam's deposition on Wednesday.  Please let me know if that will work.  There is no reason we cannot complete Ms. Youmaran's deposition on Tuesday as currently scheduled.  I am willing to take it by Zoom if that is preferred.


Given the Court's recent Order stating that "[n]o further extension will be granted absent truly extraordinary circumstances," I am not comfortable filing another Stipulation to extend the deadline for taking his deposition.  What I would suggest is that Plaintiffs file a motion for protective order.  We will not oppose it as long as the only extensions being sought are to complete Mr. Khalaj's deposition and for defendants to disclose experts.  We are not going to agree to extend the discovery date for any other discovery.  Please let me know if you are in agreement that a Motion for Protective Order is the best approach to take to get Mr. Khalaj's deposition postponed.

Thank you.

Lori


**From:** Marc Nurik <mnurik@victorrane.com>
**Sent:** Saturday, December 19, 2020 5:08 PM
**To:** Lori Berke <Lori@berkelawfirm.com>
**Subject:** Fw: Khalaj Depositions


Lori:

My client, David Khalaj is currently ill, with fever, chills and other ailments. Unfortunately, his condition has not improved while he has remained at home- in fact it has worsened. He is currently on a regimen of antibiotics.  In addition, his condition has made it impossible for us to work with him to prepare for the deposition. He suspects now that he may have strep throat, but cannot see a doctor again till Tuesday. (inadvisable to go to urgent care centers). As such, he is unable to prepare for and attend next Tuesday's deposition.


It makes no sense for me to go thru the current increased risks involved in flying from LA to  Phoenix (two hot spots) given his condition (likely contagious)  only to learn, what we already know- that he remains too sick to attend, let alone, unable to prepare.


We will have to move the deposition (s) again. While I am free the following week on Tuesday and Wednesday if that suits your schedule, considering how slow he has been in recovering, I suggest moving the depositions to the beginning of January.


Clearly, we both want more time to do follow up discovery and I am amenable to making whatever request we both think makes the most sense to convince the Court to give us more time.


Marc

# EXHIBIT 11

## Jody Corbett

| | |
|---|---|
| **From:** | Lori Berke |
| **Sent:** | Tuesday, December 22, 2020 12:07 PM |
| **To:** | Jody Corbett |
| **Subject:** | FW: Khalaj v. City - Phone Conference |

FYI

**From:** Dana Zokaeim <dzokaeim@victorrane.com>
**Sent:** Monday, December 21, 2020 6:04 PM
**To:** Lori Berke <Lori@berkelawfirm.com>; Richard Lazenby <rlazenby@victorrane.com>
**Cc:** Marc Nurik <mnurik@victorrane.com>
**Subject:** RE: Khalaj v. City - Phone Conference

Lori,

Thank you for taking our call. To reiterate the conversation as well as Marc's email to you on Saturday, David Khalaj is unable to prepare for or to attend his scheduled deposition as he is sick and his condition has only worsened.

Further, the remaining length of time for the deposition of Juliet is a total of 19 minutes. Due to Juliet's emotional condition, which you surely witnessed at both of her depositions, her attorneys must be present at her deposition. It would be impractical for Marc to make two trips to Arizona, especially during a pandemic, for 19 minutes of questioning. It would further be nonsensical to ask Juliet, who has been exposed to David's illness, to appear before you, her attorneys, or anyone else at this time.

Because our clients cannot appear, we have provided alternative dates of availability to Defendants to take the depositions, including as early as next week. We have also offered to stipulate to extend the deadline for Defendants to provide their expert disclosures. Defendants have refused this offer.

Thank you,
Dana

Dana Zokaeim | Attorney
VICTOR RANE
9350 Wilshire Boulevard | Suite 308
Beverly Hills | California | 90212
P 310.388.4849 | F 310.388.4869
www.victorrane.com

Due to office closures/remote work and other protocols enacted to address the spread of COVID-19, we kindly request that all pleadings, notices, correspondence and other documents be served via e-file or email in lieu of regular mail or overnight/priority delivery until further notice. This does not constitute a waiver of any mail/facsimile-service requirements prescribed by applicable state rules of civil procedure or Federal Rule of Civil Procedure 5, but is requested solely as a precautionary measure during our physical office closures.  Should you have any questions or concerns regarding this request, please contact the undersigned via email.

NOTICE: This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If

you have received this message in error please notify dzokaeim@victorrane.com delete this message and any attachments accompanying it immediately.  Thank you.

**From:** Lori Berke <Lori@berkelawfirm.com>
**Sent:** Monday, December 21, 2020 12:40 PM
**To:** Dana Zokaeim <dzokaeim@victorrane.com>; Richard Lazenby <rlazenby@victorrane.com>
**Cc:** Marc Nurik <mnurik@victorrane.com>
**Subject:** RE: Khalaj v. City - Phone Conference

I'm available anytime after 4:00 my time.

Lori

**From:** Dana Zokaeim <dzokaeim@victorrane.com>
**Sent:** Monday, December 21, 2020 1:15 PM
**To:** Lori Berke <Lori@berkelawfirm.com>; Richard Lazenby <rlazenby@victorrane.com>
**Cc:** Marc Nurik <mnurik@victorrane.com>
**Subject:** Khalaj v. City - Phone Conference

Hi Lori,

I hope you're well. Please let us know if you're available for a call from Richard Lazenby and I today. We are available before 2:30 p.m. and after 4 p.m., your time. The subject of the call pertains to the requested unopposed protective order.

Thank you,
Dana

Dana Zokaeim | Attorney
VICTOR RANE
9350 Wilshire Boulevard | Suite 308
Beverly Hills | California | 90212
P 310.388.4849 | F 310.388.4869
www.victorrane.com

Due to office closures/remote work and other protocols enacted to address the spread of COVID-19, we kindly request that all pleadings, notices, correspondence and other documents be served via e-file or email in lieu of regular mail or overnight/priority delivery until further notice. This does not constitute a waiver of any mail/facsimile-service requirements prescribed by applicable state rules of civil procedure or Federal Rule of Civil Procedure 5, but is requested solely as a precautionary measure during our physical office closures.  Should you have any questions or concerns regarding this request, please contact the undersigned via email.

NOTICE: This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If you have received this message in error please notify dzokaeim@victorrane.com delete this message and any attachments accompanying it immediately.  Thank you.

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj and Juliet David Youmaran, a married couple | ) No. CV-17-01199-PHX-GMS (JZB) ) ) ) ) AFFIDAVIT OF NON-APPEARANCE ) IN THE SCHEDULED DEPOSITION ) OF JULIET DAVID YOUMARAN |
| Plaintiffs, | ) |
| vs. | ) ) |
| City of Phoenix, Arizona, a municipal corporation, Lillian Fine and John Doe Fine, husband and wife; Scott Melander and Jane Doe Melander, husband and wife; Sgt. Green and Jane Roe Green, husband and wife; Todd Blanc and Jane Roe Blanc, husband and wife; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

BE IT KNOWN THAT, Jeffrey W. Bartelt, a person duly authorized to administer oaths in the State of Arizona and a duly certified court reporter, being first duly sworn upon his oath, deposes and states as follows:

THAT, pursuant to Notice of Deposition, he appeared at the offices of Bartelt|Nix Reporting, LLC, 3101 North Central Avenue, Suite 290, Phoenix, Arizona 85012 at 10:00 a.m.

THAT, between 10:00 a.m. and 10:30 a.m. of this date, the witness, JULIET DAVID YOUMARAN, did not appear for the taking of said deposition.

DATED at Phoenix, Arizona, this 22nd day of Decemer 2020,

_____
JEFFREY W. BARTELT, RPR
Certification No. 50363

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj and Juliet David Youmaran, a married couple | ) No. CV-17-01199-PHX-GMS (JZB) |
| | ) |
| Plaintiffs, | ) AFFIDAVIT OF NON-APPEARANCE ) IN THE SCHEDULED DEPOSITION ) OF DAVID KHALAJ |
| vs. | ) |
| City of Phoenix, Arizona, a municipal corporation, Lillian Fine and John Doe Fine, husband and wife; Scott Melander and Jane Doe Melander, husband and wife; Sgt. Green and Jane Roe Green, husband and wife; Todd Blanc and Jane Roe Blanc, husband and wife; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

BE IT KNOWN THAT, Jeffrey W. Bartelt, a person duly authorized to administer oaths in the State of Arizona and a duly certified court reporter, being first duly sworn upon his oath, deposes and states as follows:

THAT, pursuant to Notice of Deposition, he appeared at the offices of Bartelt|Nix Reporting, LLC, 3101 North Central Avenue, Suite 290, Phoenix, Arizona 85012 at 10:30 a.m.

THAT, between 10:30 a.m. and 11:00 a.m. of this date, the witness, DAVID KHALAJ, did not appear for the taking of said deposition.

DATED at Phoenix, Arizona, this 22nd day of December, 2020.

JEFFREY W. BARTELT, RPR
Certification No. 50363

# EXHIBIT 13

1  Lori V. Berke (#015628)
   Jody C. Corbett (#019718)
2  **BERKE LAW FIRM, PLLC**
   1601 N. 7th Street, Suite 360
3  Phoenix, AZ 85006
   Phone: (602) 254-8800
4  Fax: (602) 254-8808
5  lori@berkelawfirm.com
   jody@berkelawfirm.com
6

7  Attorneys for Defendants City of Phoenix, Lillian
        (Fine) Melander, Scott Melander, Michael Green,
8     and Todd Blanc

9                    **IN THE UNITED STATES DISTRICT COURT**
10
                           **DISTRICT OF ARIZONA**
11

12  David Khalaj and Juliet David Youmaran, a
    married couple,                                    NO. CV-17-01199-PHX-GMS (JZB)
13
14                              Plaintiffs,            **DECLARATION OF LORI V. BERKE**
                                                       **IN SUPPORT OF MOTION FOR**
15       vs.                                           **SANCTIONS AGAINST PLAINTIFFS**

16  City of Phoenix, Arizona, a municipal
    corporation, Lillian Fine and John Doe
17  Fine, husband and wife; Scott Melander and
    Jane Doe Melander, husband and wife; Sgt.
18  Green and Jane Loe Green, husband and
    wife; Todd Blanc and Jane Roe Blanc,
19  husband and wife;
20
                                Defendants.
21

22
23  STATE OF ARIZONA      )
                          ) ss.
24  County of Maricopa    )

25          I, Lori V. Berke, say and attest the following:
26

27

28                                        1

1.   I am the principal attorney with the law firm Berke Law Firm, PLLC, and I represent Defendants City of Phoenix, Lillian (Fine) Melander, Scott Melander, Michael Green, and Todd Blanc ("Defendants") in this action.  I have been with the Berke Law Firm since March 1, 2008.  Prior to opening the Berke Law Firm, I was a partner at the firm of Shughart, Thomson & Kilroy, which had previously been Goodwin Raup, PC.  Before that, I was an associate at Goodwin Raup, which was formerly Mitten, Goodwin & Raup.  I have been representing governmental entities and employees for the entirety of my career.

2.   I am a member in good standing of the State Bar of Arizona and have been practicing law in Arizona since 1995.  I am admitted to practice in all courts in the State of Arizona, as well as the Ninth Circuit Court of Appeals and the United States Supreme Court.  I have tried cases in the United States District Court for the District of Arizona and state Superior Courts throughout Arizona.  I have also argued multiple appeals before the Arizona Court of Appeals and the Ninth Circuit Court of Appeals.

3.   I am AV rated by Martindale Hubbell and have been recognized in the 2007 through 2012 and 2021 editions of Best Lawyers in America.  I was also named a Southwest Super Lawyer in 2010 through 2012 and 2014-2020.

4.   Since I began practicing law, I have worked on numerous cases representing both plaintiffs and defendants in civil litigation matters, including, but not limited to completing the following tasks: advising clients on various legal issues; drafting and reviewing complaints; reviewing notices of claim and other client documents; identifying and researching relevant legal issues; drafting motions to dismiss; drafting and reviewing answers; communicating with and coordinating with opposing parties and counsel regarding

2

proposed discovery schedules; drafting written discovery requests; preparing responses to written discovery requests; reviewing and analyzing discovery responses, including documents produced in discovery; conducting depositions; drafting discovery deficiency letters; drafting and arguing motions to compel and for protective orders; drafting and arguing motions for summary judgment and supporting statements of facts; preparing for and participating in settlement conferences; preparing for jury trials, including drafting pretrial documents including motions in limine, jury instructions, joint proposed pretrial orders, verdict forms, and trial memoranda; and conducting jury trials and bench trials.

5.      A substantial portion of my practice for the past twenty-five years has involved representing governmental entities and police officers in cases involving alleged civil rights violations brought pursuant to 42 U.S.C. § 1983.

6.      This Declaration is being submitted in support of the Motion for Sanctions Against Plaintiffs filed by Defendants.

7.      On December 22, 2020, I appeared for the continued deposition of Plaintiff Juliet Youmaran at or before 10:00 a.m. at the noticed location of the deposition and remained there until 11:00 am.

8.      Ms. Youmaran failed to appear for her deposition.

9.      On December 22, 2020, I appeared for the deposition of Plaintiff David Khalaj at or before 10:30 a.m. at the noticed location of the deposition and remained there until 11:00 am.

10.      Mr. Khalaj failed to appear for his deposition.

11.    As a result of Ms. Youmaran and Mr. Khalaj failing to appear for their depositions, Defendants incurred the cost of the appearance of the court reporter in the amount of $150.00 and the appearance of the videographer in the amount of $350.00, totaling $500.00.

12.    Attached hereto as Exhibit A are the invoices of the court reporter and videographer supporting these amounts.

13.    Also, as a result of Plaintiffs' failure to appear for their depositions, Defendants incurred $450.00 in attorneys' fees for my appearance for these depositions (1.8 hours at the rate of $250.00 per hour).

14.    I am generally familiar with the billing rates charged for similarly qualified attorneys.  My hourly rate in this case of $250.00 per hour is a discounted rate.  In my professional judgment, my hourly rate is consistent with or lower than local practice and is reasonable for the work performed in this case.  Indeed, the rate billed is abundantly reasonable for the complexity of the claims at issue in this lawsuit and my extensive experience.  I believe the fees requested herein to be reasonable.

15.    Therefore, in total, Defendants incurred $950.00 in attorneys' fees and costs for Plaintiffs' failure to appear for their scheduled depositions.

16.    I declare under penalty of perjury that the foregoing is true and correct.

DATED this 31st day of December, 2020.

_____
Lori V. Berke

4

# EXHIBIT A



# INVOICE

1 of 1

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 100490 | 12/23/2020 | 88598 |

| Job Date | Case No. |
|---|---|
| 12/22/2020 | |

| Case Name |
|---|
| Khalaj and Youmaran vs. City of Phoenix |

| Payment Terms |
|---|
| Due upon receipt |

Jody C. Corbett, Esq.
Berke Law Firm, PLLC
1601 N. 7th Street
Suite 360
Phoenix, AZ 85006

---

AFFIDAVIT OF NON-APPEARANCE:

    Juilet David Youmaran & David Khalaj

        Affidavit of  Non-Appearance                  1.00           @        150.000        150.00

                                                    **TOTAL DUE  >>>**         **$150.00**

THANK YOU FOR YOUR BUSINESS!!        Reporter:  J. Bartelt

TERMS:  DUE UPON RECEIPT, 1.5% INTEREST PER MONTH ON UNPAID BALANCE.
  **There is a 3% charge for credit card payments.

REGISTERED REPORTING FIRM No. R1028
This invoice complies with the ACJA Section 7-206(F)(3) as set forth in (J)(1)(g)(3) through (6)

---

**Tax ID:** 46-5583999

*Please detach bottom portion and return with payment.*

Jody C. Corbett, Esq.
Berke Law Firm, PLLC
1601 N. 7th Street
Suite 360
Phoenix, AZ 85006

| | | | |
|---|---|---|---|
| Job No. | : 88598 | BU ID | : Bart|Nix |
| Case No. | : | | |
| Case Name | : Khalaj and Youmaran vs. City of Phoenix | | |
| Invoice No. | : 100490 | Invoice Date | : 12/23/2020 |
| **Total Due** | : **$150.00** | | |

**PAYMENT WITH CREDIT CARD**

Cardholder's Name:
Card Number:
Exp. Date:           Phone#:
Billing Address:
Zip:       Card Security Code:
Amount to Charge:
Cardholder's Signature:
Email:

Remit To:   **BARTELT | NIX REPORTING**
            **T: 602.254.4111**
            **3101 North Central Avenue, Suite 290**
            **Phoenix, AZ 85012**



# INVOICE

1 of 1

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 100491 | 12/23/2020 | 88598 |

| Job Date | Case No. |
|---|---|
| 12/22/2020 | |

| Case Name |
|---|
| Khalaj and Youmaran vs. City of Phoenix |

| Payment Terms |
|---|
| Due upon receipt |

Jody C. Corbett, Esq.
Berke Law Firm, PLLC
1601 N. 7th Street
Suite 360
Phoenix, AZ 85006

VIDEOGRAPHY OF:

Juilet David Youmaran & David Khalaj - Video

| Video Service - 2-hour minimum | 1.00 | @ | 350.000 | 350.00 |
|---|---|---|---|---|
| | **TOTAL DUE  >>>** | | | **$350.00** |

THANK YOU FOR YOUR BUSINESS!!        Videographer:   T. Gonzales

TERMS:  DUE UPON RECEIPT, 1.5% INTEREST PER MONTH ON UNPAID BALANCE.
  **There is a 3% charge for credit card payments.

REGISTERED REPORTING FIRM No. R1028
This invoice complies with the ACJA Section 7-206(F)(3) as set forth in (J)(1)(g)(3) through (6)

**Tax ID:** 46-5583999

*Please detach bottom portion and return with payment.*

Jody C. Corbett, Esq.
Berke Law Firm, PLLC
1601 N. 7th Street
Suite 360
Phoenix, AZ 85006

Job No.    : 88598            BU ID      : Bart|Nix
Case No.   :
Case Name  : Khalaj and Youmaran vs. City of Phoenix

Invoice No.  : 100491          Invoice Date  : 12/23/2020
**Total Due  : $350.00**

| PAYMENT WITH CREDIT CARD |
|---|
| Cardholder's Name: |
| Card Number: |
| Exp. Date:                Phone#: |
| Billing Address: |
| Zip:           Card Security Code: |
| Amount to Charge: |
| Cardholder's Signature: |
| Email: |

Remit To:  **BARTELT | NIX REPORTING**
**T: 602.254.4111**
**3101 North Central Avenue, Suite 290**
**Phoenix, AZ 85012**