**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Khalaj, et al., | No. CV-17-01199-PHX-GMS (JZB) |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Respondents. | |

Pending before the Court is Defendants' Motion for Sanctions (doc. 219) and Motion to Deem Admissions Admitted (doc. 220).

**I.      Summary of Conclusions.**

Throughout this action, Plaintiff David Khalaj, through his attorneys, disclosures, and personal declarations, has asserted that his arrest on January 1, 2016 negatively impacted his earning potential from his employment as a Real Estate Agent. His assertions made clear that his active participation in client development was crucial to both his brand and business development. Plaintiff Khalaj is seeking more than $1.3 million in damages for his lost income between 2016 through 2021.

In February 2020, Plaintiff Khalaj submitted a response to Defendants' Interrogatory No. 19, in which he has been employed as a Real Estate Agent at Pro Sports Realty from "September 2015 – to present." On April 15, 2020, Plaintiff Khalaj submitted an application for Social Security Disability benefits, wherein he claims he has been unable

to work and unemployed since July 17, 2018. At no time following his application did Plaintiff supplement his discovery response or disclose the existence of his Social Security Application to Defendants. Indeed, Defendants only discovered Plaintiff's failure to supplement when, by chance, on December 23, 2020 – three weeks before the close of discovery – Defendants stumbled upon the fact during the deposition of Plaintiff Youmaran's social security attorney, Mr. Jefferey Milam.

After briefing and a hearing on this issue, it is clear to this Court that Plaintiff Khalaj was aware of inaccurate information that he disclosed, and that Plaintiff Khalaj failed to timely supplement his incorrect disclosure in violation of Federal Rule of Civil Procedure 26(e). Plaintiff Khalaj's failure has caused prejudice to Defendants through the loss of time, resources, and opportunity to fully develop and defend their case. Accordingly, the Court will grant Defendants' Motion for Sanctions based on that failure. Additionally, the Court will grant Defendants' Motion for Sanctions for Plaintiff's failure to appear at a properly noticed deposition, and Defendants' Motion to Deem Admitted Requested Admissions to which Plaintiffs failed to respond.

## II.     Background.

### A.     Plaintiff's Claims and Requested Damages.

On December 29, 2016, Plaintiffs initiated this action by filing a civil complaint in Maricopa County Superior Court. (Doc. 1-1 at 6.) On April 21, 2017, Defendants removed the action to this Court. (Doc. 1.) On October 24, 2018, Plaintiffs filed their Second Amended Complaint (SAC) alleging that, on January 1, 2016, Defendants violated Plaintiffs' civil rights by subjecting Plaintiffs to an unlawful arrest and imprisonment at Sky Harbor International Airport. (Doc. 72.) Specifically, Plaintiffs assert three claims: (1) Arizona state law claims for false arrest/imprisonment against Defendant City of Phoenix; (2) civil rights claim brought pursuant to 42 U.S.C. § 1983 for false arrest/imprisonment and unreasonable force/threats against all Defendants; and (3) negligent failure to train under Arizona law and failure to train and supervise under 42 U.S.C. § 1983 against Defendant City of Phoenix. (*Id.*) As remedy for their claims, Plaintiffs' seek "[g]eneral and

special damages, including but not limited to medical costs for both physical and emotional injuries, pain, suffering and anxiety, and loss of business and reputation in amounts to be proven at trial[.]" (*Id.* at 16.)

### B.  Extensions and Delays.

On November 7, 2018, Defendant City of Phoenix filed a Motion to Dismiss Counts Two and Three of Plaintiffs' SAC. (Doc. 73.) After two extensions of time (docs. 74, 77), that motion was fully briefed on December 24, 2018 (docs. 76, 79). On February 26, 2019, Defendants Blanc, Fine, Green, and Melander filed an Answer to Plaintiffs' SAC. (Doc. 81.) On August 1, 2019, the Court denied Defendant City of Phoenix's Motion to Dismiss. (Doc. 84.)

On September 9, 2019, the Court issued an order setting a Rule 16 Case Management Conference for October 21, 2019. (Doc. 85.) On September 11, 2019, Defendants filed a Motion to Continue the Case Management Conference (doc. 86), and the Court granted the Motion, resetting the Conference for October 24, 2019 (doc. 87).

On September 27, 2019, Defendant City of Phoenix filed an Answer to Plaintiff's SAC. (Doc. 88.) On October 24, 2019, the Court held the CMC as scheduled. (Doc. 90.) On October 25, 2019, the Court issued a scheduling order setting, *inter alia,* the following case management deadlines: Discovery due by March 27, 2020; Dispositive motions due by April 24, 2020. (Doc. 91.)

On December 27, 2019, Plaintiffs filed a Motion for Extension of Time to Complete Discovery to Extend Expert Disclosure Deadlines. (Doc. 97.) On December 30, 2019, the Court granted the Motion, extending expert disclosure and dispositive motion deadlines approximately 30 days. (Doc. 98.)

On February 13, 2020, the parties submitted a second Motion to Extend Deadlines. (Doc. 107.) Therein, the parties sought extensions of all remaining deadlines due to delays associated with Defendants' desire to depose employees of federal agencies, and with Plaintiffs' counsel's ability to prepare for scheduled depositions because of technology issues. (*Id.*) On February 14, 2020, the Court granted the Motion in part, but denied the

parties request to extend the dispositive motion deadline. (Doc. 112.) Specifically, the Court noted that "[t]o date, the parties have collectively filed more than 15 motions for extension of time in this case. (Docs. 6, 13, 15, 18, 25, 28, 42, 54, 57, 62, 65, 74, 77, 97, 107.)" (Doc. 112 at 2.) The Court added that the parties had failed to establish the extraordinary circumstances necessary to warrant the requested extension of the dispositive motion deadline. (*Id.* at 3.)

On March 18, 2020, Defendants filed an unopposed third Motion for Extension of Case Deadlines. (Doc. 130.) Therein, Defendants asserted that "the current situation faced around the world, in the entire United States, and in Arizona with the rapid spread of COVID-19, constitutes extraordinary circumstances that justify extension of the remaining case deadlines." (*Id.* at 3.) The Court agreed and granted the Motion. (Doc. 134.) The parties requested and have received an additional seven extensions of case management deadlines: in May 2020 (doc. 151); July 2020 (doc. 172); August 2020 (doc. 183); September 2020 (doc. 189); October 2020 (doc. 200); November 2020 (doc. 211); and December 2020 (doc. 216). In the Court's December 15, 2020 Order granting the parties' Tenth Extension of Case Management Deadlines request, the Court stated that

> This case was filed in April 2017 and is nearly four years old. The Court will grant a limited extension to the parties' deadline for fact discovery and Defendants' expert disclosure. The Court denies the parties' request to extend other deadlines in this case. No further extension will be granted absent truly extraordinary circumstances.

(Doc. 217 at 2.) The current deadline for fact discovery and expert disclosures is January 18, 2021, and the deadline for dispositive motions is April 12, 2021.

### C.   Current Motions.

On December 31, 2020, Defendants concurrently filed two motions: (1) Defendants' Motion for Sanctions (doc. 219); and (2) Defendants' Motion to Deem Admitted Requested Admissions (doc. 220). On January 4, 2021, the Court ordered Plaintiffs to file an expedited response to both motions. (Doc. 221.) On January 14, 2021, the Court held oral argument on both motions. (Doc. 225.)

At the 90-minute hearing, the Court heard from both parties and provided each side

with an opportunity to thoroughly explain its position. The Court asked questions of both parties and is satisfied that no further briefing on the issues is necessary. The Court will address both Motions below.

### III.    Motion for Sanctions.

In their first Motion, Defendants move for sanctions against Plaintiffs Khalaj and Youmaran on the basis that they failed to disclose or supplement that Plaintiff Khalaj filed for Social Security disability benefits in April 2020, claiming that he had been unable to work since July 2018, and that Plaintiffs failed to appear for their depositions on December 22, 2020, without first contacting the Court. (Doc. 219.) The Court will grant Defendants' Motion.

### A.    Legal Standards.

#### 1.    Federal Rule of Civil Procedure 26.

Under Rule 26(b)(1), unless otherwise limited by court order, the scope of discovery is as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Under Rule 26(e),

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e).

#### 2.    Federal Rule of Civil Procedure 37.

Under Rule 37(c)(1):

1
2
3
4

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

5
6

> (A)    may order payment of reasonable expenses, including attorney's fees, caused by the failure;

7
8

> (B)    may inform the jury of the party's failure; and

> (C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[1]

9

Fed. R. Civ. P. 37(c)(1).

10
11
12
13
14
15
16
17
18

The Ninth Circuit has held, "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983), *citing Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Sanctions against a party "may be imposed even for negligent failure to provide discovery." *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir. 1985), *citing Lew v. Kona Hospital*, 754 F.2d 1420, 1427 (9th Cir. 1985); *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978).

19
20
21
22
23
24
25
26
27
28

---

[1] Sanctions listed in Rule 37(b)(2)(A)(i)-(vi) include:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing matters in evidence;

> (iii)    striking pleadings in whole or in part;

> (iv)    staying further proceedings until the order is obeyed;

> (v)    dismissing the action or proceeding in whole or in part;

> (vi)    rendering default judgment against the disobedient party[.]

### 3. Inherent Authority.

The Court has inherent authority to issue sanctions when appropriate. *B.K.B. v. Maui Police Dept.*, 27 F.3d 1091 (9th Cir. 1091). This inherent power enables courts to sanction "for conduct which abuses the judicial process." *Id.* at 1108 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). A court's exercise of its inherent sanctioning power is appropriate when there has been "willful disobedience of [a] court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *Fink*, 239 F.3d at 991 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980), superseded by statute on other grounds). Courts must exercise this authority to sanction with "restraint and discretion." *Roadway Express*, 447 U.S. at 764. Courts have "routinely insisted upon a finding of bad faith" before sanctions may be imposed under inherent authority. *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989).

### B. Failure to Supplement.

In their Motion for Sanctions, Defendants first allege that they "are entitled to sanctions for Plaintiffs' failure to disclose that Plaintiff David Khalaj filed for Social Security disability benefits claiming that he has been unable to work since July 2018." (Doc. 219.) The Court agrees.

### 1. Relevant Facts.

On November 26, 2019, Defendants served interrogatories on Plaintiffs (doc. 219-1, Ex. 3, at 22-26), including Interrogatory No. 19, which states:

**List each job or position of employment including self-employment, held by you for the past ten (10) years, stating as to each, the following:**

    **a.    Name and address of employment.**

    **b.    Date of commencement of and date of termination.**

    **c.    Place of employment.**

    **d.    Nature of employment and duties performed.**

    **e.    Name and address of immediate supervisor.**

    **f.    Rate of pay or compensation received.**

    **g.    Reason for separation from employment.**

(*Id.* at 25.) On February 14, 2020, Plaintiff Khalaj submitted his response, under oath[2]:

> **Real Estate Agent**
> **3930 East Ray Road**
> **Phoenix, Arizona 85044**
>
> **REALTY EXECUTIVES**
> **August 1996 - September 2015**
>
> **PRO SPORTS REALTY**
> **September 2015 - to present**
> **Broker:  Sandy Young**
>
> **Mr. Khalaj had formed Pro Sports Realty in 2007 and decided in 2015 to pursue his own venture on a full time basis. His office has been located at all times at 3930 East Ray Road, Phoenix, Arizona 85044.**

(Doc. 219-1, Ex. 4, at 30.)

On March 13, 2020, Plaintiffs disclosed their real estate expert witness John Foltz and the expert report Mr. Foltz authored. (Doc. 219-1, Ex. 2.) In his report, Mr. Foltz describes Plaintiff Khalaj's business development style.

> David Khalaj's business was intentionally built on relationships. He saw a way to be a mentor to those in need of his guidance, and seemed to thrive on the satisfaction of being trusted and helpful to those who could benefit from his expertise. He is personal, by nature, and gravitates to others as a mentor, caretaker, and servant-leader. Beginning in the late 1990's, he designed his personal office in our company as a "hangout" for young ball players with lounge chairs, TV, billiard table, and places to relax. His office is filled with sports memorabilia, signed jerseys, and thank you notes from players, coaches, and others. It was common for professional players to be there just to hang out. **He built his central growth strategy on being like a caring uncle to young men who were, for the most part, a long way from home and in need of someone more experienced they could trust.** And, from my observations over a long period of time, his own business energy is powered by being appreciated and held in high esteem.

(*Id.* at 11 (emphasis added).) Mr. Foltz describes Khalaj as a "servent-leader" style salesperson, who depends on his "own self image and skills to be a gift to others." (*Id.* at 12.) Mr. Foltz adds that Mr. Khalaj's arrest (called "The Event" in Foltz's report) "and its publicity would probably impact his business in a significant way." (*Id.*) "[T]he time and energy in attending to the aftermath in his family and in legal defenses of such an event would, naturally, be a huge distraction. Evidence of that could be reflected in a reduced

---

[2] *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

generation of new business or pro-active follow up on referrals." (*Id.*) Ultimately, Mr. Foltz opines that Plaintiff Khalaj suffered approximately $1,374,381 in lost income from January 1, 2016 through 2021. (*Id.* at 14.)

On April 14, 2020, Plaintiff Khalaj submitted his Application for Social Security Disability Benefits through his Social Security Attorney, Mr. Jeffrey L. Milam. (Doc. 219-1, Ex. 7.) Therein, Plaintiff affirmatively answers "No" to direct questions asking whether he was employed or self-employed in 2019 or 2020. (*Id.* at 60.) Plaintiff Khalaj adds remarks stating "**I am totally disabled and can no longer work.**" (*Id.* at 61 (emphasis added).) When asked to provide a job history, Plaintiff states that he has had one job in the past 15 years, as a "Realtor." (*Id.* at 67.) Plaintiff submits that he was employed between January 1996 and July 2018. (*Id.*) When asked for a job description, Plaintiff states "I showed homes and sold homes; conducted open houses; got property ready to be shown and sold; managed contracts; drove clients to look at homes; negotiated contracts." (*Id.*) When asked whether he is currently working, Plaintiff states "No, he has stopped working." (*Id.*) When asked for the reason he stopped working, Plaintiff submits it was "[b]ecause of his condition." (*Id.*)

On August 6, 2020, Defendants deposed Mr. Foltz. (Doc. 219-1, Ex. 5.) At his deposition, Mr. Foltz testified that he met with Khalaj on two different occasions in January 2020 to discuss information needed by Mr. Foltz to prepare his report in the case, including one meeting at Mr. Khalaj's office. Mr. Foltz described Khalaj's office as "a gathering place" with "things that were on the wall were things that were motivational that relate to players. The thankfulness players and others, that strategy was clearly – that part of the strategy was clearly the same." (*Id.* at 43.)

During the deposition, Mr. Foltz also testified that he had limited knowledge of Plaintiff Khalaj's health condition during the time before and after the January 1, 2016 incident, and that his opinion of the amount of lost wages looked only at the income generated prior to and after the event. When Defense Counsel specifically asked Mr. Foltz "But certainly if he was so ill that he could hardly work, that could impact someone's

business; correct?" Mr. Foltz responded that "Yeah. . . . The answer is going to be yes, of course, it could. I have no way to know that it did or didn't." (Doc. 219-1, Ex. 5, at 40.)

On December 23, 2020, three and a half weeks before the close of discovery, Defendants deposed Mr. Milam, who was recently disclosed as Plaintiff Youmaran's social security attorney assisting with her separate disability filing. (Doc. 219 at 5, 15; Doc. 222-1 (supplemental transcript filing of Mr. Milam's deposition).) At that deposition, Mr. Milam – following an objection to questions over an email between him and Mr. Khalaj on the basis of attorney client privilege – disclosed that he was representing Mr. Khalaj in his own independent disability claim. Thus, ten months after Khalaj averred under oath that he was presently employed as a real estate agent, and more than eight months after Khalaj filed his social security disability application, Defendants were finally made aware that Plaintiff Khalaj had not been working for more than 29 months, since July 2018.

### 2.    Analysis.

The Court finds that Plaintiff Khalaj's failure to supplement his February 2020 response to Interrogatory No. 19 was in violation of Rule 26(e). Fed. R. Civ. P. 26(e) ("A party . . . who has responded to an interrogatory. . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]").

Under Rule 37(c)(1), if a party fails to provide information as required under Rule 26(e), the party subject to sanctions unless the failure was substantially justified or harmless. In the context of a sanction under Rule 37(c)(1), the party facing sanctions bears the burden of proving that its failure to disclose or supplement discovery with the required information was substantially justified or is harmless. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).

### i.    Plaintiff Khalaj's Failure to Supplement was not Substantially Justified.

In the discovery context, substantial justification has been defined as whether "reasonable people could differ as to whether the party" acted appropriately. *Reygo Pacific Corp. v. Johnston Pump Co.,* 680 F.2d 647, 649 (9th Cir. 1982); *See also Tomkins v. Schmid Sys., Inc.*, No. CV 03-335-TUC-CKJ, 2005 WL 2592576, at *1 (D. Ariz. Oct. 13, 2005) ("If a party's actions in the discovery dispute were 'substantially justified,' sanctions need not be imposed; an action is 'substantially justified . . . if reasonable people could differ as to whether the party' acted appropriately under the pertinent rules of procedure.") (internal quotes and citations omitted.))

Here, the Court finds that Plaintiff Khalaj's failure to supplement was not substantially justified. It is undisputed that Plaintiff Khalaj, in his February 14, 2020 response to Defendants' Interrogatory No. 19, states he was presently employed as a Real Estate Agent at that time. It is further undisputed that, in April of 2020, Plaintiff affirmatively filed a Social Security disability application, wherein he stated that he was unemployed and unable to work since July of 2018.

Based on that record, Mr. Khalaj was necessarily aware of his inability to work when he answered Defendants' Interrogatory No. 19. Mr. Khalaj was also aware of his inability to work in March of 2020, when he disclosed an expert report by Mr. Foltz, wherein Mr. Foltz opined on Plaintiff's lost income with the implicit assumption that Plaintiff is capable of work. Despite that, Plaintiff did not supplement his discovery responses at that time. Nor did Plaintiff supplement his discovery response in August 2020, when Defendants deposed Mr. Foltz with no knowledge of Plaintiff's complete inability to work or previous social security filing.

Not until December 23, 2020, at the deposition of Mr. Milam – who Plaintiffs had disclosed as counsel for Ms. Youmaran in her Social Security proceedings, but not as counsel for Mr. Khalaj – finally, was Mr. Khalaj's social security application wherein he describes his inability to work disclosed to Defendants. Even then, the information was only obtained by chance, when an objection was made to questions regarding an email between Mr. Khalaj and Mr. Milan on the basis of attorney client privilege.

Over ten months passed between Plaintiff Khalaj's false answer to Defendants' Interrogatory No. 19 and any disclosure regarding its inaccuracy. Undoubtedly, Plaintiff was presented with ample time and opportunity to supplement his incomplete and incorrect disclosure; and he has presented no reasonable basis for his failure to do so. Accordingly, the Court finds that Plaintiff Khalaj's failure to supplement was not substantially justified.

At the hearing and in their brief, Plaintiffs present several arguments that sanctions are not justified against Plaintiffs, and that Khalaj's failure to supplement is substantially justified. Plaintiffs first argue that Khalaj's "Response to Interrogatory No. 19 is not inconsistent with [Khalaj's] Application for Social Security Disability Benefits" because Khalaj "has had, at best, a passive role in his business since July 2018" and "[h]e no longer actively participates in the selling or buying of properties or runs his business." (Doc. 224 at 8-9.)[3] The Court disagrees. Plaintiffs' answer to Interrogatory No. 19 and his representations made in his Social Security disability application are mutually exclusive. In one, he states he is presently employed as a Real Estate Agent. In the other, he states he has been unable to work in any capacity since July 2018.

Second, Plaintiff argues that a reduction in Plaintiffs' passive income in recent years is a result of the event underlying this litigation, and not Plaintiff's inability to work due to a disability. (Doc. 224 at 9-10.) The Court understands Plaintiffs' argument, but that is a question better decided at summary judgment or before a jury. Presently, the Court must consider only whether Plaintiff Khalaj has engaged in a violation of Rule 26(e) by failing to supplement his response to Interrogatory No. 19.[4]

Third, Plaintiffs argue that Plaintiff Khalaj did not "intentionally conceal" information that was never asked of him. (Doc. 224 at 10-11.) Specifically, Plaintiffs contend that "Defendants fail to point to any discovery requests or inquiry related to Plaintiff's disability that could have affected his propensity to work." (*Id.* at 10.) Importantly, Plaintiffs acknowledge that "Defendants may argue that a subpart of

---

[3] Plaintiffs do acknowledge that there is an "error" in Khalaj's application, where he affirmatively represents that he is not self-employed. (Doc. 224 at 9.)
[4] To the extent Plaintiffs are contending that a sanction dismissing their damages claim would be inappropriate, the Court agrees, and discusses appropriate remedies below.

Interrogatory No. 19, which asked for the 'nature of employment' or 'duties performed' was not responded to" but "[t]his is not akin to 'concealment' of pertinent information and is not remotely akin to destruction of information." (*Id.* at 11.) Plaintiffs add that "[i]f Defendants needed more information or supplementation of the response to Interrogatory No. 19, Defendants appropriate recourse was to first meet and confer on the issue, and to file discovery motions if they still considered the answer to be unresponsive." (*Id.*)

Plaintiffs third argument seems disingenuous, reeks of gamesmanship, and fails. Defendants did ask for the nature of Plaintiff's employment, as well as a detailed description of his duties performed. It is Plaintiff who left those subparts blank, and Plaintiff who falsely answered that he was presently employed as a real estate agent. What is more, the fact that Plaintiff provided a description of his job duties in his Social Security disability application less than two months after avoiding the question in his interrogatory responses only makes it appear more likely that the misleading response to Interrogatory No. 19 was intentional. Additionally, the fact that Plaintiffs disclosed Ms. Youmaran's Social Security disability application shows that Plaintiffs were aware of the relevance such proceedings could have on this action.

It seems likely that, had Plaintiffs provided a truthful answer that Plaintiff was no longer employed in their Response to Interrogatory No. 19, Defendants would have been prompted to follow up as to the neglected subparts, and possibly even proceed differently in discovery. Indeed, at the hearing, Defendants argued that Plaintiff's false answer that he was currently employed as a Real Estate Agent altered many of their decisions on how to proceed in discovery including how to prepare for depositions, what questions to ask, and what follow up discovery to engage in. This argument goes to the prejudice that Defendants experienced based on Plaintiffs' failure to disclose, as discussed further directly below.

**ii.    Defendants Were Prejudiced by Plaintiff Khalaj's Violation.**

The Court finds that Plaintiff's failure to supplement his responses to Defendants' Interrogatory No. 19 has resulted in prejudice to Defendants in the form of lost time and

- 13 -

opportunity to follow up on discovery options, and depose witnesses (specifically, Mr. Foltz and Ms. Youmaran) armed with information they should have known.

Plaintiffs' argue that "Defendants have in no way been prejudiced by this information." (Doc. 224 at 11-12.) Defendants assert they have been prejudiced in two primary ways: (1) "Plaintiffs have grossly misrepresented their most significant claim for damages through discovery responses and disclosure of their expert" and "Defendants have "already spent a substantial amount of time and money on defending against Plaintiffs' claim for damages to Khalaj's earnings in his real estate business"; and (2) Defendants did not have the opportunity to question Mr. Foltz or Ms. Youmaran – both of whom have already sat for their deposition[5] – about Plaintiff Khalaj's claim that he has been totally disabled and unable to work since July of 2018.

The Court agrees with Plaintiff that Defendants would have been forced to defend Plaintiffs' damages claim even if Mr. Khalaj's violation had not occurred. However, the Court finds that Defendants have suffered prejudice in the form of missed opportunity for discovery and questioning at depositions.

Defendants were deprived of a line of questioning that could have helped them understand and impeach Mr. Foltz's report. Defendants were deprived of an opportunity to conduct follow up discovery into Plaintiff's involvement in his business, and assess the impact of his damages claim as it related to him as a passive owner whose "brand" had been tarnished, vs. the direct lost sales and commissions that Mr. Khalaj has appeared to claim all along. (*See* Doc. 154 at 4-5 (Plaintiffs' Motion to Quash Defendants Subpoena Seeking Financial Records for Plaintiff Khalaj's Business, Pro Sports Realty) ("Plaintiffs disclosed an expert report that outlines the scope of financial harm to the Plaintiffs relative to the underlying claim, that harm associated with a loss of commissions, real estate business, on the part of Mr. Khalaj, a real estate agent." – "In other words, **the financial damage loss claim of Plaintiffs relates solely to the loss of clientele, loss of business to Mr. Khalaj as a licensed real estate agent.**") (emphasis added); Doc. 161 at 3 (Plaintiffs'

---

[5] Mr. Foltz deposition was completed in August 2020. Defendants have 19 minutes remaining for the deposition of Ms. Youmaran.

Reply in Support of their Motion to Quash) ("Plaintiffs understand that the real estate business, Pro Sports Realty, LLC, is not a Plaintiff in this case; Plaintiffs further understand, however, that the loss of income they are claiming in this case is loss of income through Pro Sports Realty and the real estate agency license possessed by Mr. Khalaj and the income **he derives from his license in assisting clients to buy and sell homes and property**, all through the business vehicle, Pro Sports Realty, LLC.") (emphasis added).)

At the hearing, Plaintiffs' counsel described the shifted argument – as to *how* Mr. Khalaj's income was affected by the underlying event – as "nuanced." The Court calls it stretched. To be sure, Plaintiffs' own expert report details how Khalaj's business is developed based on his personal relationships, ability to be "a mentor, caretaker, and servant-leader." (Doc. 219-1 at 11.) It goes on to say that the impact of Mr. Khalaj's arrest would serve as "a huge distraction[,]" evidenced by "a reduced generation of new business or pro-active follow up on referrals." (*Id.* at 12.) However, the merits of Plaintiffs' damages claim are not before this Court.

At bottom, the Court finds that Plaintiff Khalaj has deprived Defendants of a meaningful opportunity to defend their case through his misleading and false discovery response which he failed to supplement in a timely manner. *See* Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 37(c)(1). Accordingly, the Court will grant Defendants Motion for Sanctions on that basis.

### C. Failure to Appear.

In their Motion, Defendants also move the Court to sanction Plaintiffs for their failure to appear at their depositions scheduled for December 22, 2020. (Doc. 219 at 7-11, 16-17.)

#### 1. Relevant Background.

Plaintiffs' depositions were originally scheduled to be taken on August 11 and 12, 2020. (Docs. 175, 176.) However, for various reasons, those depositions were rescheduled several times. (Docs. 181, 182 (rescheduled to August 27 and 28, 2020); Docs. 193, 194 (rescheduled to September 29 and 30, 2020); Docs. 205, 206 (rescheduled to November 17

and 18, 2020).

On November 17, 2020, Defendants began the deposition of Ms. Youmaran, but it could not be completed due to the number of breaks requested by Youmaran, and her claim that she was too tired to continue. (Doc. 219-1, Ex. 8, at 73-80.) Defendants continued Ms. Youmaran's deposition the next day, the date on which Mr. Khalaj was scheduled to be deposed. (Doc. 219-1, Ex. 9, at 82-87.) The deposition ended early, with 19 minutes remaining, when Ms. Youmaran insisted that she was unable to read when she is stressed, and thus could not answer questions about documents Defendants presented her with. (*Id.*) The parties rescheduled the depositions for Mr. Khalaj and Ms. Youmaran again, this time for December 8 and 9, 2020. (Docs. 211, 213.)

On December 3, 2020, Plaintiffs' counsel contacted Defendants' counsel and advised that one of Plaintiffs' family members, who resides in the same household, might have been exposed to COVID-19. (Doc. 216.) Out of an abundance of caution, the parties agreed to reschedule Plaintiffs' depositions for December 22 and 23, 2020. (*Id.*) Because of that delay, On December 11, 2020, the parties, by joint stipulation, sought their tenth extension of case management deadlines. (*Id.*) On December 15, 2020, the Court granted the parties stipulation, but noted it was the parties tenth such extension and warned that "No further extension will be granted absent truly extraordinary circumstances." (Doc. 217 at 2.)

On Saturday, December 19, 2020 at 5:07 p.m. Arizona time, Plaintiffs' counsel emailed Defendants counsel advising that Mr. Khalaj was ill, and that he would have to move the depositions again. (Doc. 219-1, Ex. 10, at 89-90.) The next day, Sunday, December 20, 2020, Defendants' counsel responded by email, stating that "Given the Court's recent order stating that '[n]o further extension will be granted absent truly extraordinary circumstances,' I am not comfortable filing another Stipulation to extend the deadline for taking his deposition." (*Id.* at 89.) Defendants' counsel suggested that Plaintiffs file a motion for a protective order, which Defendants would not oppose so long as it sought only to extend Mr. Khalaj's deposition and for Defendants to disclose experts.

(*Id.*)

The parties spoke again on Monday, December 21, 2020. (Doc. 219-1, Ex. 11, at 92-93.) The record makes clear that Plaintiffs provided alternate dates of availability for Defendants to take the depositions. Plaintiffs also offered to stipulate to extend the deadline for Defendants to provide their expert disclosure, which Defendants declined. Defendants' counsel informed Plaintiffs' counsel that "there was no reason Ms. Youmaran's deposition (of which only nineteen minutes remain) could not go forward" and "stated that she had no alternative but to appear for the depositions the following day and obtain Affidavits of Non-Appearance from the Court Reported in the event Plaintiffs failed to appear[.]" (Doc. 219 at 10.) Plaintiffs' counsel sent an email memorializing their call, and reiterating that Ms. Youmaran and Mr. Khalaj would not be appearing for their scheduled depositions. (Doc. 219-1, Ex. 11.)

On December 22, 2020, both Plaintiffs failed to appear for their depositions as scheduled. (Doc. 219-1, Ex. 12, at 95-96.)

## 2.      Legal Standard.

Under Fed. R. Civ. P. 37(d), the Court may "order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for [his or her] deposition." Further, a party's failure to appear for his or her deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). As a sanction for failure to appear for a properly noticed deposition, the Court may issue an order including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed.

- 17 -

Fed. R. Civ. P. 37(b)(2)(A), 37 (d)(3). "Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. Civ. P. 37(d)(3).

The Ninth Circuit has held that a district court's award of sanctions against a party for failing to appear at his deposition was appropriate, even when the opposing party's counsel was willing to work with the party to reschedule the deposition and when the party's deposition was ultimately taken. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993). This is because when a party fails to appear for his deposition, the opposing party is prejudiced by that failure and later compliance does not "cure the effects" of the failure to appear. *Id.*; *see also G-K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647-48 (9th Cir. 1978).

### 3. Discussion.

Defendants seek sanctions for Plaintiff Khalaj's and Youmaran's failure to appear at their scheduled depositions on December 22, 2020. (Doc. 219.) It is undisputed that both depositions were properly noticed under Rule 30. (Docs. 214, 215.) It is also undisputed that Mr. Khalaj and Mr. Youmaran did not appear for their scheduled deposition. (*See* Doc. 219-1, Ex. 12.) It is further undisputed that Plaintiffs' counsel made no effort to contact the Court to seek an order excusing Plaintiffs' absence, or requesting the Court intervene because of the overriding case management deadline concerns that prevented Defendants from being willing to reschedule. Instead, Plaintiffs simply did not appear.

At the hearing, the Court asked Plaintiffs' counsel why it did not contact the Court when it became clear that the parties would not reach an agreement to stipulate to extend the case management deadlines. Plaintiffs' counsel responded that he hoped not to involve the Court. He should have. The parties were at an impasse. Defendants properly noticed a deposition for Plaintiffs, at which Plaintiffs were unable to appear. When Plaintiffs sought to reschedule and Defendants refused because of the Court's deadlines, it became

1  Plaintiffs' burden to seek out Court intervention. Plaintiffs did not seek Court intervention
2  – Plaintiffs made no effort whatsoever to contact the Court.

3  Accordingly, the Court will grant Defendants' Motion for Sanctions.

4  **D.**    **Remedy.**

5  Having granted Defendants' Motion for Sanctions for both Plaintiffs' Failure to
6  Supplement and Failure to Appear, the Court must now determine what remedy is
7  appropriate.

8  Defendants ask the Court to dismiss Plaintiffs' damages claim based on an alleged
9  loss of real estate transactions due to Plaintiff Khalaj's arrest. (Doc. 219 at 18.) The Court
10  finds this sanction is inappropriate, and disproportionate to the violation. Instead, the Court
11  will permit Defendants to re-depose Plaintiffs' expert, Mr. Foltz, for up to two hours. The
12  Court will also permit Defendant an additional hour to depose Ms. Youmaran on topics
13  reasonably related to those topics that would have been raised had Mr. Khalaj not failed to
14  supplement his discovery response – namely, Mr. Khalaj's disability claim and work status
15  since July of 2018. Both the two-hour deposition of Mr. Foltz, and the additional hour-
16  deposition of Ms. Youmaran will be conducted at Plaintiffs' expense, to include costs and
17  Defendants' attorney's fees, as well as three hours of preparation time[6] for Defendants'
18  counsel.

19  Defendants next ask the Court to permit Defendants to conduct discovery at
20  Plaintiffs' expense directed at Plaintiff Khalaj's claim of disability. (Doc. 219 at 18.) The
21  Court will permit additional discovery related to Plaintiff Khalaj's disability; however, it
22  will not require Plaintiffs' to pay the associated costs. Had Plaintiff Khalaj properly
23  supplemented his discovery response at an earlier date, Defendants would have paid for
24  their own discovery associated with the information. The Court's sanctions are intended to
25  return Defendants to where they would have been but for the violation; not bestow a
26  windfall upon them, nor bludgeon Plaintiffs with unnecessary expense.

27
28  ---
[6] The Court includes additional time to prepare in its sanction because Defendants' counsel will reasonably require this additional time to prepare for the depositions which would not have been needed absent Plaintiffs' violation. The Court finds that the additional three hours at Plaintiffs' expense is an appropriate sanction in these circumstances.

1    Defendants also ask the Court to require Plaintiffs Youmaran and Khalaj to appear

2    for and complete their depositions. (Doc. 219 at 18.) Plaintiffs do not oppose this request.

3    The Court will order that Plaintiffs appear for and complete their respective depositions on

4    or before February 26, 2021.

5    At the hearing, Defendants added that they would like to subpoena and depose the

6    employees of Pro Sports Realty. The Court will extend all remaining deadlines by 90 days

7    to complete the requested discovery, however the Court will not order that Plaintiffs pay

8    the expense of such additional discovery.

9    Lastly, Defendants seek attorney's fees and costs associated with their Motion for

10   Sanctions, as well as the fees and costs incurred as a result of Plaintiffs' non-appearance at

11   their December 22, 2020 deposition. The Court will grant both requests. Defendants must

12   file a Motion for Attorneys' Fees detailing the reasonable cost of their motion, the non-

13   appearance, as well as the fees and costs associated with the additional deposition time the

14   Court has permitted of Mr. Foltz and Ms. Youmaran, above.

15   **IV.    Motion to Deem Admitted Requested Admissions.**

16   On December 31, 2020, Defendants filed a Motion to Deem Admitted Requested

17   Admissions set forth in Defendant Michal Green's Requests for Admissions to Plaintiffs

18   and Defendant Todd Blanc's Request for Admissions to Plaintiffs. (Doc. 220.) On January

19   4, 2021, the Court ordered Plaintiffs to file a response to Defendants' Motion. (Doc. 221.)

20   No response was filed.

21   On January 14, 2021, at the hearing set for argument on the pending motions, the

22   Court asked Plaintiffs' counsel why no response had been filed. Plaintiffs' counsel

23   apologized, and stated that it had been overlooked, but that in the interest of efficiency,

24   Plaintiffs have no objection to the Motion.

25   Accordingly, the Court will grant Defendants' Motion. (Doc. 220.) The Court will

26   adopt Defendants' proposed order (doc. 220-2 at 1-8), and deem all admissions listed

27   therein as admitted by Plaintiffs David Khalaj and Juliet Youmaran, not to be disputed by

28   them for the remainder of the proceedings in this case.

**IT IS ORDERED**:

1.     Defendants' Motion for Sanctions (doc. 219) is **granted** to the extent provided in this Order.

    a.     Defendants are permitted an additional two hours to re-depose Mr. John Foltz, at Plaintiffs' expense.

    b.     Defendants are permitted an additional one hour to depose Plaintiff Juliet Youmaran on topics reasonably related Mr. Khalaj's disability claim and work status since July of 2018, at Plaintiffs' expense.

    c.     Defendants are permitted three hours of additional preparation necessary for the depositions of Mr. Foltz and Ms. Youmaran, at Plaintiffs' expense.

    d.     Defendants are permitted to conduct additional discovery related to Plaintiff Khalaj's disability, at Defendants' own expense.

    e.     Defendants are permitted additional time to complete discovery, including the subpoena and deposition of the employees of Pro Sports Realty. Any such discovery is at Defendants' own expense.

    f.     The Court will grant Defendants' request for attorneys' fees and costs associated with Plaintiffs' non-appearance at the December 22, 2020 deposition.

2.     On or before **March 26, 2021**, Defendants shall file a motion for attorney's fees, detailing:

    a.     All fees and costs, including for preparation, associated with the additional deposition time for Mr. Foltz and Ms. Youmaran.

    b.     All fees and costs associated with Defendants' Motion for Sanctions (doc. 219).

    c.     All fees and costs incurred as a result of Plaintiffs' non-appearance at their December 22, 2020 deposition.

    d.     All fees and costs associated with Defendants' Motion for Attorneys'

fees, directed to be filed in this order.

3. On or before **February 26, 2021**, Plaintiffs Youmaran and Khalaj shall appear for and complete their depositions. Defendants shall file notice with the Court when deposition of both parties is complete.

4. The Court will extend all remaining deadlines in this action to complete the additional discovery necessitated by Plaintiff Khalaj's failure to supplement. The following deadlines are extended as detailed:

   a. The deadline for completion of fact discovery, including discovery by subpoena, shall be **April 23, 2021**.

   b. Defendants shall provide full expert disclosures no later than **April 23, 2021**.

   c. Parties shall engage in good faith settlement talks no later than **April 30, 2021**.

   d. Rebuttal expert disclosures shall be made no later than **May 10, 2021**.

   e. Expert depositions shall be completed no later than **June 11, 2021**.

   f. Dispositive Motions shall be filed no later than **July 9, 2021**.

5. Defendants' Motion to Deem Admissions Admitted (doc. 220) is **granted**. The Court **adopts** Defendants' proposed Order (doc. 220-2 at 1-8). The Clerk is directed to attach Defendants' proposed Order (doc. 220-2 at 1-8) as an exhibit to this Order.

Dated this 22nd day of January, 2021.

Honorable John Z. Boyle
United States Magistrate Judge